STANTON v LLOYD HAMMOND PRODUCE FARMS

Docket No. 58154. Argued February 2, 1977 (Calendar No. 12).—
Decided May 6, 1977.

Ronald Stanton, a truck driver, claimed workmen's compensation
benefits against Lloyd Hammond Produce Farms and Farm
Bureau Mutual Insurance Company for injuries he suffered in
an accident while returning from a delivery trip for his em-
ployer, in which he had taken an alternate route to make
arrangements for a ride home from work. The Workmen's
Compensation Appeal Board determined that the plaintiff's
injuries arose out of and in the course of his employment, and
awarded compensation for medical expenses but denied wage
compensation because plaintiff's injury occurred before a deci-
sion of the Supreme Court that the exclusion of agricultural
employees from the wage benefit coverage of the Worker's
Disability Compensation Act is unconstitutional. The Court of
Appeals, Allen, P. J., and Bronson and R. M. Maher, JJ., af-
firmed as to medical benefits, and reversed as to wage benefits
(Docket No. 22408). Defendants appeal. *Held:*

1. There is no fixed formula, but in any workmen's compensa-
tion case the nature of the deviation by the employee from a
business route must be balanced against the clarity of authori-
zation and effect of the activity on the employment relationship
or the interests of the employer. The Workmen's Compensation
Appeal Board correctly found the plaintiff's route on the day of
his injury constituted a "slight deviation". On the previous
night he had worked late and had had to spend the night in his
employer's truck. The only way the plaintiff could arrange a
ride home was to take the alternate route to deliver a message.
There is no indication that the plaintiff's employer ever gave
him instructions as to the route he was to follow. The deviation

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Workmen's Compensation §§ 252, 286.
[3, 6, 7, 11, 12] 81 Am Jur 2d, Workmen's Compensation § 121 *et seq.*
[4, 8] 16 Am Jur 2d, Constitutional Law §§ 179, 180.
[5, 8] 16 Am Jur 2d, Constitutional Law § 431.
[9] 16 Am Jur 2d, Constitutional Law § 178.
[10] 16 Am Jur 2d, Constitutional Law § 41.

was not beyond the contemplation of his employer in view of the amount of driving plaintiff did for his employer and the facts which necessitated his alternate route.

2. The general rule is that an unconstitutional statute is void *ab initio.* The prospective-retroactive issue is relevant in situations where a previously valid common-law doctrine or prior judicial rule of constitutional interpretation is being abandoned. In the instant case, considerations of justice and practicality do not warrant the limited effect of prospective application of the ruling that the statute is unconstitutional. It would be patently unfair to deny plaintiff benefits for injuries sustained in an accident before the statutory exclusion was declared unconstitutional, but after the plaintiffs in the case which declared the statute unconstitutional were injured. Therefore, the agricultural exclusion in the Workmen's Compensation Act is held to be void from the date of its enactment, and the plaintiff is entitled to wage benefits.

Affirmed.

Justice Coleman dissented. She agreed that the injury arose out of and in the course of employment, but as to retroactivity issue would hold:

1. The "general rule" that an unconstitutional statute is void *ab initio* is not strictly applied or consistently followed. Certain factual circumstances might warrant the retroactive application of an unconstitutional statute.

2. It is difficult to reconcile the constitutional interests reflected in a new rule of law with reliance interests founded upon the old. Statutory or judge-made rules of law are hard facts upon which people must rely in making decisions and in shaping their conduct. Absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid statute enacted in good faith and by no means plainly unlawful.

3. The statute in this case was not clearly invalid. The defendant employer could justifiably have relied on previous decisions of the Supreme Court which tacitly approved the agricultural exception. It could not predict that the Court would reverse its prior position and void the statute. Defendant's reliance upon the statute and case law was justified.

4. Facts will dictate different dispositions but when feasible an opinion of the court should be applicable to the case decided and all like causes arising thereafter. In any case the court should hereafter carefully consider the possible retroactivity of

each suitable decision and plainly state the determined application.

67 Mich App 279; 240 NW2d 773 (1976) affirmed.

### Opinion of the Court

1. Workmen's Compensation—Course of Employment—Detour—Personal Business.

   There is no fixed formula, but in any workmen's compensation case the nature of a deviation by the employee from a business route of his employer to attend to personal business must be balanced against the clarity of authorization and effect of the activity on the employment relationship or the interests of the employer in determining whether an injury incurred on the detour arose out of and in the course of employment.

2. Workmen's Compensation—Course of Employment—Detour—Personal Business.

   There was a sufficient nexus between a worker's employment and his injury while driving his employer's delivery truck to warrant workmen's compensation benefits where: he was injured while taking an alternate route which was a slight deviation from his ordinary route; on the previous night he had worked late and had had to spend the night in his employer's truck; the only way to arrange for a ride home from his employer's place was to take the alternate route to deliver a message; and there was no indication that his employer ever gave him instructions as to the route he was to follow.

3. Workmen's Compensation—Constitutional Law—Equal Protection—Agricultural Workers.

   A section of the Worker's Disability Compensation Act which excludes certain agricultural workers from compensation benefits is unconstitutional because it denies them equal protection of the laws (MCL 418.115[d]; MSA 17.237[115][d]).

4. Statutes—Constitutional Law.

   The general rule is that an unconstitutional statute is void *ab initio*.

5. Statutes—Constitutional Law—Caselaw—Retroactive Application.

   Decisions holding legislative acts unconstitutional may, on occasion, be given limited retroactive application in recognition of the necessities of governmental administration.

6. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—CASELAW—
   RETROACTIVE APPLICATION—AGRICULTURAL WORKERS.

   Considerations of justice and practicality do not warrant the
   limited effect of prospective application of a decision that a
   section of the Worker's Disability Compensation Act is uncon-
   stitutional because it denies wage benefits to agricultural work-
   ers; it would be patently unfair to deny a plaintiff weekly
   benefits for injuries sustained before the statutory exclusion
   was declared unconstitutional, but after the plaintiffs in the
   case which declared the statute unconstitutional were injured
   (MCL 418.115[d]; MSA 17.237[115][d]).

7. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—AGRICULTURAL
   WORKERS.

   The agricultural exclusion from wage benefits for certain workers
   in the Worker's Disability Compensation Act was void from the
   date of its enactment, and an agricultural worker injured
   before it was declared. unconstitutional is entitled to wage
   benefits (MCL 418.115[d]; MSA 17.237[115][d]).

DISSENTING OPINION

COLEMAN, J.

8. STATUTES—CONSTITUTIONAL LAW.

   *The general rule that an unconstitutional statute is void ab initio
   is not today strictly applied nor has the rule been consistently
   followed; certain factual circumstances might warrant the ret-
   roactive application of an unconstitutional statute.*

9. COURTS—CONSTITUTIONAL LAW—NEW RULE OF LAW.

   *The Supreme Court must reconcile the constitutional interests
   reflected in a new rule of law with reliance interests founded
   upon the old because statutory or judge-made rules of law are
   hard facts on which people must rely in making their decisions
   and shaping their conduct.*

10. STATUTES—CONSTITUTIONAL LAW.

    *Absent contrary direction, state officials and those with whom
    they deal are entitled to rely on a presumptively valid state
    statute enacted in good faith and by no means plainly unlaw-
    ful.*

11. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—NEW RULE OF
    LAW—AGRICULTURAL WORKERS.

    *Reliance by an agricultural employer upon a section of the
    Worker's Disability Compensation Act and caselaw which ex-*

*cludes certain agricultural workers from compensation benefits was justified because the statute was not clearly invalid, and the employer could not predict that the Supreme Court would reverse its prior position and void the statute because it was an unconstitutional denial of equal protection of the laws; therefore the opinion holding the statute unconstitutional should be applicable to the case decided and all like cases arising thereafter.*

12. COURTS—NEW RULE OF LAW—RETROACTIVITY.

*The Supreme Court should carefully consider the possible retroactivity of each suitable decision and plainly state the determined application; all then are on notice and can be expected to abide by the decision.*

*Farhat, Burns & Story, P. C.* (by *Vittorio E. Porco)* for plaintiff.

*Munroe & Nobach, P. C.* (by *Richard R. Weiser)* for defendants.

FITZGERALD, J. Defendants appeal from a judgment of the Court of Appeals which reversed a decision of the Workmen's Compensation Appeal Board. 67 Mich App 279; 240 NW2d 773 (1976). The dispute involves two issues:

1. Whether plaintiff's injury arose out of and in the course of his employment with defendant.

2. Whether an agricultural worker is entitled to weekly benefits for a work-related injury sustained prior to our decision in *Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), which held that the agricultural exclusion in the Worker's Disability Compensation Act of 1969, 1969 PA 317, § 115(d); MCLA 418.115(d); MSA 17.237(115)(d), was in violation of the equal protection clauses of the Michigan and United States Constitutions.

The Court of Appeals decided these issues in the affirmative. We affirm.

Plaintiff drove a truck for defendant Lloyd Hammond Produce Farms, delivering produce to cities in southern Michigan and Indiana. His weekly wage of $84.40 consisted of piecework and hourly earnings. On March 1, 1972, plaintiff had driven his employer's truck to Battle Creek, Kalamazoo, Jackson, and Detroit delivering potatoes. After making his last delivery in Detroit at 5 or 5:30 in the afternoon, plaintiff began his return trip on I-96 to defendant's farm in East Lansing. Plaintiff turned north on M-52 from I-96. On M-52, plaintiff's truck skidded on a patch of ice and rolled over, causing personal injuries to plaintiff.

A hearing was held in March 1973, and the referee awarded wage benefits of $56.53 per week from March 2, 1972 to May 4, 1972 and medical expenses. The Workmen's Compensation Appeal Board, in a three-to-two decision, reversed on the award of wage benefits, deciding against retroactive application of *Gallegos v Glaser Crandell Co, supra.* However, the board unanimously agreed that plaintiff's injuries arose out of and in the course of his employment and affirmed the award of medical expenses. Defendant Lloyd Hammond Produce Farms had the agricultural medical coverage required by MCLA 418.115(e); MSA 17.237(115)(e). The Court of Appeals affirmed the award of medical expenses and reinstated the referee's award of weekly wage benefits.

I

Defendants argue that the injuries sustained by plaintiff did not arise out of and in the course of his employment and, therefore, are not in any way compensable. It is clear from the record that on plaintiff's return trip from Detroit to his employ-

er's farm in East Lansing on March 1, 1972, he turned north on M-52 from I-96 for the purpose of stopping by his sister's home, where he had been staying, to tell her that he would be home that night and to inform his brother-in-law that he would need a ride home from the farm. Plaintiff's sister lived near the intersection of M-52 and M-78, and plaintiff intended to proceed southwest on M-78 to his employer's farm in East Lansing after he had made arrangements for a ride home from work. However, the accident happened on M-52 before plaintiff reached his sister's house. Ordinarily, plaintiff would have continued on I-96 past M-52 on a trip from Detroit to his employer's farm. The route taken by plaintiff on the day of the accident would have added about ten miles to the total trip, and defendants claim that this deviation was such a departure from his employment as to be a bar to plaintiff's workmen's compensation claim.

In *Thomas v Certified Refrigeration, Inc,* 392 Mich 623; 221 NW2d 378 (1974), this Court overruled the holding of *Conklin v Industrial Transport, Inc,* 312 Mich 250; 20 NW2d 179 (1945), that even a slight deviation to carry out a personal mission would preclude compensation. In *Thomas* this Court found that a workman's injury arose out of and in the course of his employment where plaintiff was involved in an automobile accident in his employer's truck, which he was permitted to keep at home overnight, while deviating from his normal route to work to take his daughter to school. After reviewing *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973); *Burchett v Delton-Kellogg School,* 378 Mich 231; 144 NW2d 337 (1966); and *Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966), the *Thomas* Court said:

"We do not suggest that every authorized use of a company-owned vehicle or deviation from a business route will fall within this triad of cases. An authorized but totally private excursion such as using the company vehicle for weekend personal errands certainly is not covered because such trips lack a dual purpose required by *Burchett* or a 'sufficient nexus between the employment and the injury' required by *Nemeth.* If a personal business detour is so great that the deviation dwarfs the business portion of the trip, it no longer can be said that it is 'a circumstance of [the] employment' as required by *Howard.* This Court will not attempt to fix any formula, but in any case the nature of the deviation must be balanced against the clarity of authorization and effect of the activity on the employment relationship or the interests of the employer." 392 Mich 623, 634–635.

In the instant case, the Workmen's Compensation Appeal Board correctly found that plaintiff's alternative route on the day of his injuries constituted a "slight deviation". Also, plaintiff testified that his sister's telephone was temporarily out of order and that the only way to tell her of his whereabouts and to make arrangements for a ride home from work was to see her personally. On the previous evening plaintiff had worked too late to get a ride home and had to spend the night in his employer's truck. In view of these circumstances, there was a sufficient nexus between plaintiff's employment and his injuries to warrant compensation.

Defendants argue that *Thomas* is not applicable in the instant case since there is no evidence that plaintiff's employer authorized plaintiff's deviation for personal business. *Thomas* avoided ruling on the "further issue whether injury is compensable which occurs off the employer's premises during a personal activity unapproved by the employer but

where the activity is reasonably incidental to the
employment relationship". 392 Mich 623, 636.
However, there is no indication that plaintiff's
employer ever gave any instructions as to what
route he was to follow in making his deliveries.
Thus, while plaintiff's deviation may not have
been expressly authorized, it was certainly not
beyond the contemplation of his employer in view
of the amount of driving plaintiff did for his em-
ployer and the factual basis which necessitated
plaintiff's slightly longer alternative route.

In *Thomas,* this Court suggested the extension of
the rule in *Crilly v Ballou,* 353 Mich 303; 91
NW2d 493 (1958), from its factory locale to vehicle
cases. *Crilly* involved the issue of whether injuries
resulting from horseplay at the job site arose out
of and in the course of employment. In reaching
his conclusion that such deviation from regular
employment was part of the work environment,
and thus, that resulting injuries were compensa-
ble, Justice TALBOT SMITH in *Crilly* quoted from
*Secor v Penn Service Garage,* 19 NJ 315; 117 A2d
12 (1955), as follows:

  " 'An employee is not an automaton, and, even when
  he is highly efficient, he will to some extent deviate
  from the uninterrupted performance of his work. Such
  deviation, if it be considered minor in the light of the
  particular time, place and circumstance, is realistically
  viewed by the employer and the employee as a normal
  incidence of the employment relation and ought not in
  this day be viewed as legally breaching the course
  thereof. Fulfillment of the high purposes of our socially
  important and ever broadening workmen's compensa-
  tion act suggests this approach and nothing in the
  statutory terms dictates any narrower position.' " 353
  Mich 303, 314.

In view of the foregoing, we affirm the holding of

the Court of Appeals that plaintiff's injury arose out of and in the course of his employment with defendant.

## II

Defendants challenge the award of wage benefits to plaintiff on the basis of MCLA 418.115(d); MSA 17.237(115)(d). Defendants maintain that since plaintiff's accident preceded this Court's holding in *Gallegos v Glaser Crandell Co, supra,* that decision is not applicable to the instant case. *Gallegos* held that MCLA 418.115(d); MSA 17.237(115)(d) was unconstitutional because it excluded certain agricultural employees from the coverage of the Michigan Worker's Disability Compensation Act of 1969, thus denying them equal protection of the laws. The Workmen's Compensation Appeal Board agreed with defendants' argument and gave *Gallegos* prospective application. Plaintiff urges that *Gallegos* be given retroactive application, arguing that the statutory exclusion was void *ab initio.* The Court of Appeals consciously avoided the application of the void *ab initio* theory to the agricultural exclusion, but found that the Workmen's Compensation Appeal Board's application of the exclusion violated plaintiff's right to equal protection and reversed the board's denial of wage benefits.

It is a general rule of statutory interpretation that an unconstitutional statute is void *ab initio.* This principle is stated in 16 Am Jur 2d, Constitutional Law, § 177, pp 402–403, as follows:

"The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and ineffective for any purpose; since unconstitutionality dates from the time

of its enactment, and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed."

That this rule has been consistently followed in Michigan there can be no doubt. See *Adsit v Secretary of State,* 84 Mich 420; 48 NW 31 (1891); *Michigan Sugar Co v Auditor General,* 124 Mich 674; 83 NW 625 (1900); *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160; 150 NW2d 752 (1967); *People v Carey,* 382 Mich 285; 170 NW2d 145 (1969) (opinion of T. M. KAVANAGH, J.); and *Horrigan v Klock,* 27 Mich App 107; 183 NW2d 386 (1970).

*Briggs v Campbell, Wyant & Cannon Foundry Co, supra,* involved the question of whether an amendatory state statute could apply retroactively in order to cure defects of a statute previously declared unconstitutional. In discussing this issue, the *Briggs* Court held that the prior unconstitutional statute was void from the date of its passage and, therefore, could not be cured retroactively by a subsequent statutory amendment, unless the contrary clearly appeared from the context of the statute itself.

In *Horrigan v Klock, supra,* the Court of Appeals followed the rule that an unconstitutional statute is void *ab initio,* which was reaffirmed in *Briggs,* in holding that *Maki v East Tawas,* 18 Mich App 109; 170 NW2d 530 (1969), *aff'd* 385 Mich 151; 188 NW2d 593 (1971), which declared a state statute to be unconstitutional, was "fully retroactive". See *Pittman v Taylor,* 398 Mich 41, 46; 247 NW2d 512 (1976).

Defendants claim that *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), and *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960),

support their argument that *Gallegos* should be applied prospectively. However, these two cases are clearly distinguishable from *Gallegos* in that they involve the overruling of established common-law doctrines rather than the constitutional declaration with respect to the validity of a statute. The prospective-retroactive issue is relevant in situations where a previously valid common-law doctrine or prior judicial rule of constitutional interpretation is being abandoned. Such situations are analogous to the amendment or repeal of existing statutes by the Legislature. However, in the instant case we are concerned with the question of whether an unconstitutional statute is to be given any effect, and thus, *Williams* and *Parker* are inapposite.

Defendants rely on *Lemon v Kurtzman,* 411 US 192; 93 S Ct 1463; 36 L Ed 2d 151 (1973), for the proposition that an unconstitutional statute is not necessarily void *ab initio. Lemon* involved the question whether the State of Pennsylvania was permitted to reimburse nonpublic sectarian schools for services rendered after a statute was enacted authorizing such reimbursement but before the statute was declared unconstitutional. In *Lemon,* Chief Justice Burger observed that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct". 411 US 192, 199.

Defendants argue that in view of the *Lemon* decision, policy considerations dictate the prospective application of *Gallegos.* It is defendants' contention that the retroactive application of *Gallegos* would place a substantial financial burden upon small farmers and insurance companies who had justifiably relied upon the agricultural exclusion contained in MCLA 418.115(d); MSA 17.237(115)(d),

thereby resulting in a denial of due process to these groups.

We are not unmindful that certain factual circumstances might warrant the retroactive application of an unconstitutional statute. In *Dearborn Fire Fighters Union Local No 412, IAFF v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975), Justice LEVIN, citing *Lemon v Kurtzman, supra,* wrote that "[d]ecisions holding legislative acts unconstitutional have, on occasion, been given limited retroactivity *in recognition of the necessities of governmental administration".* 394 Mich 229, 271. (Emphasis supplied.) *Dearborn Fire Fighters* involved a constitutional challenge of the validity of 1969 PA 312; MCLA 423.231 *et seq.;* MSA 17.455(31) *et seq.,* which provides for compulsory arbitration of police and fire department labor disputes. In an opinion joined by Chief Justice T. G. KAVANAGH, Justice LEVIN wrote:

"In addition to the almost insurmountable administrative, political, and judicial problems that would be created by any attempt to unravel and renegotiate the 'contracts' imposed by police and fire department arbitration panels, application of this decision retroactively would cause hardship on employees and employers and would not be constructive. Michigan labor organizations, their members and municipalities have justifiably relied on a presumptively valid statute." 394 Mich 229, 271–272.

However, in the instant case, considerations of justice and practicality do not warrant the limited effect of the prospective application of *Gallegos.* Indeed, it would be patently unfair to deny plaintiff weekly benefits for injuries sustained in an accident occurring prior to the time the statutory exclusion was declared unconstitutional, but subsequent to the time the *Gallegos* plaintiffs were

injured. In *Gallegos,* it was said that "There is no basis for distinguishing the work of a laborer who drives a truck at a factory from a laborer who drives one on the farm * * * ", 388 Mich 654, 667. It seems clear that a denial of weekly benefits to plaintiff in the instant case would be no less a denial of equal protection of the laws than it was to the *Gallegos* plaintiffs and could find support neither in logic nor justice. Therefore, we hold that the agricultural exclusion contained in MCLA 418.115(d); MSA 17.237(115)(d), which was declared unconstitutional in *Gallegos,* was void from the date of its enactment.

The decision of the Court of Appeals is affirmed, with costs to plaintiff.

KAVANAGH, C. J., and WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

COLEMAN, J. *(to reverse).* It is agreed that plaintiff's injury arose out of and in the course of his employment. It occurred prior to this Court's ruling unconstitutional those portions of the Workmen's Compensation Act of 1969 which excepted piecework employees and those not employed 35 hours a week for 13 consecutive weeks.[1]

The core question of the retroactivity of *Gallegos*

---

[1] 1969 PA 317, MCLA 418.115(d); MSA 17.237(115)(d):

"All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable."

*v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), is admittedly close. The majority's concern for Mr. Stanton is appreciated and shared.

However, the consequences reach farther than Mr. Stanton. Precedent is likely to remain in Michigan jurisprudence at least long enough for further interpretation in the light of different or similar facts, and therein lies the problem.

What is mandatory today may be forbidden tomorrow by judicial fiat.

Legal history assures us that our law is not static. It is a living reflection of changing societal expectations. Historically, the law evolved through the application of fundamental concepts to a changing world.

In a comparatively recent and unusually intense surge of judicial activism, we have seen emerge changing attitudes regarding the role of the judiciary in our governmental scheme. The increased judicial activism, perhaps unavoidably, often reflects value judgments or impatience with the other branches of government.

Consequently, greater numbers of statutes and rules of common law, which for years may have been accepted and followed by all concerned, have been declared unconstitutional. Also, newly perceived "rights" have led to continuous reassessments of old law and practices to the end that trial judges and others concerned with the administration of justice as well as the lay citizen can place little reliance upon the stability of our laws.

The purpose of this assessment is not to declare rapid movement of the law either good or bad, but to pose a problem to be solved.

This case illustrates the dilemma which arises when a citizen, individually or corporately, relies upon a statute valid on its face—only later to have

the statute declared unconstitutional to the citizen's financial (or personal) disadvantage.

Does the citizen's (and his attorney's) reliance upon a law later declared to be unconstitutional deny him due process of law or fundamental fairness by reaching back in time and taking his property through judicial action in which he had no part or notice? On the other hand, is one who is injured before a court's decision of unconstitutionality, but who brings his case after that decision, to be denied the benefits of the ruling? Would he be denied equal protection of the law? So far as what is "right" and what is "wrong", a dilemma is presented.

Also, a trial judge (or administrative agency) is mandated to follow the law. Precedent set by this Court binds the lower courts (and agencies). The judge correctly applies the law on day A, but the law is eradicated on day X. How can we surmount the resultant snowballing problems?

I

Plaintiff, a piecework and hourly employee of defendant farmer, was injured in a one-car accident on March 1, 1972. In March, 1973, a referee awarded medical expenses and wage benefits of $56.53 per week for the period of March 2 to May 4, 1972. The Workmen's Compensation Appeal Board affirmed the referee's granting of medical expenses (defendant farmer carried agricultural medical coverage[2]) but reversed the award of wage benefits, saying that *Gallegos,* decided December 21, 1972, applied to Mr. Gallegos and all similar persons injured after the date of decision. The Court of Appeals affirmed WCAB's award of medi-

---

[2] MCLA 418.115(e); MSA 17.237(115)(e).

cal expenses and reinstated the referee's award of weekly wage benefits.

## II

Justice FITZGERALD states:

"It is a general rule of statutory interpretation that an unconstitutional statute is void *ab initio",* and

"That this rule has been consistently followed in Michigan there can be no doubt."

I submit that the "general rule" is not today strictly applied nor has the rule "been consistently followed in Michigan" *(e.g., People v Fields [On Rehearing],* 391 Mich 206; 216 NW2d 51 [1974]).

It is agreed that as a matter of pure logic, if we find a statute to be unconstitutional we find that it is void and therefore "never was" (even if it had been followed for 50 or more years).

However, for reasons expressed in the "prologue" to this opinion—and for many other reasons—the Justice's later observation is more realistic:

"We are not unmindful that certain factual circumstances might warrant the retroactive application of an unconstitutional statute."

In *Lemon v Kurtzman,* 411 US 192; 93 S Ct 1463; 36 L Ed 2d 151 (1973), the Supreme Court had to decide if nonpublic schools should be reimbursed for services provided under a statute which the Court later declared unconstitutional. The Court had previously "approved nonretroactive relief in civil litigation" including cases where it was asked to "reach back to disturb or attach legal

consequences to patterns of conduct premised * * * on unlawful statutes".

It is difficult to reconcile "the constitutional interests reflected in a new rule of law with reliance interests founded upon the old". The Court said it had abandoned the void *ab initio* theory because "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct".

The Court said *Lemon* concerned "the appropriate scope of federal equitable remedies". In such cases "reliance interests weigh heavily". The first *Lemon* decision was not clearly predictable. It could not be said that the schools "acted in bad faith or that they relied on a plainly unlawful statute". The Court's review was made "in light of the general principle that, absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute enacted in good faith and by no means plainly unlawful".

## III

How does this apply to Hammond Produce Farms? Legislative history and court decisions indicate that our decision in *Gallegos* was not clearly predictable. The statute was not plainly unlawful.

1912 (1st Ex Sess) PA 10 was Michigan's first legislation "providing for compensation of workmen for industrial injuries upon the basis of trade risks relating to the industry". *Mackin v Detroit-Timkin Axle Co,* 187 Mich 8; 153 NW 49 (1915). Part 1, § 1 limited the defenses an employer could use when sued by an employee for work-related injuries. Part 1, § 2 said the provisions "shall not

apply to actions to recover damages for personal
injuries sustained by household domestic servants
or farm laborers". *Mackin* said this was not "class
legislation" and did not deprive farm laborers "of
equal protection under the law".

The employee in *Shafer v Parke, Davis & Co,*
192 Mich 577; 159 NW 304 (1916), worked on a
farm owned by the company. He was kicked by a
horse. In awarding compensation, the Industrial
Accident Board said the company "should not be
classified as a farmer, inasmuch as the use of the
land was but incidental to its principal occupation
as a manufacturer". In reversing, the Court said
the statute "does not classify the employee by the
ordinary business of his employer, but by the kind
of work he, himself, is employed to do". Similar
are *Bates v Shaffer,* 216 Mich 689; 185 NW 779
(1921), and *Harper v Lowe,* 272 Mich 331; 262 NW
260 (1935). The Court tacitly approved the agricul-
tural exception.

The defendant in *Roush v Heffelbower,* 225 Mich
664; 196 NW 185 (1923), owned "a cornhusker
which he used on his own farm and on the farms
of neighbors". He "employed the plaintiff to go
with him from farm to farm and assist in its
operation". The plaintiff's right arm was caught in
the husker and had to be amputated. The plaintiff
sued; the defendant won a judgment. The Court
said "there is a reasonable and substantial distinc-
tion" between employment conditions for farm
workers and industrial workers.

In *Carroll v General Necessities Corp,* 233 Mich
541; 207 NW 831 (1926), the company used horses
in the summer and stabled them on a farm in the
winter. It did not own or have any interest in the
farm.

The injured worker had been "transferred to the

barn in question solely to look after defendant's horses". He "did not work on the farm or have anything whatever to do with it". He was injured by a horse and was awarded compensation over the corporation's objection that the worker was a farm laborer.

In affirming, the Court distinguished other cases where employees were "engaged in some form of work upon a farm which was necessary to be done for its general operation". In *Carroll,* "the defendant was not engaged in farming". The plaintiff's work did not necessarily make him a farm laborer.

1943 PA 245 amended the workmen's compensation act to make "every employer * * * and every employe, unless herein otherwise specifically provided * * * subject to the provisions of this act". Section 2a said the act "shall not apply * * * to casual employes or domestic servants or farm laborers".

In *Hammons v Franzblau,* 331 Mich 572; 50 NW2d 161 (1951), the plaintiff was employed to pick and crate apples. He suffered a leg injury and sought compensation. The compensation commission said the plaintiff was a farm laborer. The Court agreed saying that "[s]ince the picking of apples constitutes the harvesting of a crop produced from the soil, it is farm labor in the ordinary sense of the word".

1965 PA 44 amended part 1, § 2a. It applied the act to "[a]ll agricultural employers of 3 or more regular employees paid hourly wages or salaries who are employed 35 or more hours per week for a period of 13 or more weeks during the preceding 52 weeks". A new section defined an agricultural employer in part "as one who hires a person performing services * * * [i]n * * * delivering to storage or to market * * * any agricultural or

horticultural commodity; but only if such service is performed as an incident to ordinary farming operations". 1966 PA 27 amended part 1, § 2a to make clear that farm workers "paid on a piece-work basis" were not covered.

The latter language was tested in *Gallegos v Glaser Crandell Co,* 34 Mich App 489, 497; 192 NW2d 52 (1971). The plaintiffs were injured while harvesting pickles. They were paid on a piecework basis. They claimed the distinction between salaried farm workers and piece-work farm laborers denied them equal protection of the laws.

The Court of Appeals noted that our Court had upheld legislative classifications in *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510; 104 NW2d 182 (1960), and *Wolodzko v Wayne Circuit Judge,* 382 Mich 528; 170 NW2d 9 (1969). The panel could not say "that the legislative decision to amend the act so as to include certain farm laborers while continuing to exclude others was arbitrary or totally without reason". The panel felt "it would be a usurpation of legislative powers if we were to interfere without clear authority for doing so".

Our Court reversed at 388 Mich 654; 202 NW2d 786 (1972). The majority could find "no basis for distinguishing * * * any one of numerous * * * labor activities 'on the farm' * * * from the same activity in industry, wholesaling, retailing, or building". The majority was troubled by the "special treatment and classification of their employees" accorded agricultural employers. They felt this was "impermissible, clearly discriminatory and has no rational basis".

The three members of WCAB who said *Gallegos* was not retroactive recognized "the administrative problems involved in enforcing liability against a

class (Michigan farm employers) who had placed substantial reliance on legislative enactments that precluded their purchase of workmen's compensation insurance". Making *Gallegos* retroactive "would surely give rise to a question of due process".

The dissenters said it "is a fundamental principle that an unconstitutional statute is void *ab initio*". Such legislation "can neither create nor deprive anyone of any legal rights; and reliance, detrimental or otherwise, upon the provisions * * * can have no saving grace". The dissenters reviewed cases where we declared statutes void *ab initio* and said they "readily explain the Court's silence with regard to that issue in *Gallegos*".

The Court of Appeals sidestepped the issue saying the "void *ab initio* theory * * * is an [oversimplification] that we need not apply here". It "disregards the importance that changing factual contexts play in constitutional adjudication".

The panel held that applying the statute "to an employee in plaintiff's position violates his rights to equal protection".

We have a predicament. The defendant employer relied on a statute which was not clearly invalid. It could justifiably have relied on our previous decisions. It could not predict that we would reverse our prior position and void the statute. Based upon the statute and judicial precedent, any lawyer consulted would have had ample reason to advise a farmer that a piecework or part time employee did not require workmen's compensation. The small farmer could be placed in dire financial straits by retroactive application of *Gallegos*. Because in workmen's compensation there is no effective statute of limitations (this was a 1967 injury), similarly uninsured farmers could find themselves personally liable years from now.

However, the plaintiff belongs to a class which we have said in this case would be denied equal protection of the laws if the statute was enforced. He properly presented his claim. It was adjudicated after *Gallegos.* Justice FITZGERALD says it "would be patently unfair" to deny him benefits.

The competing interests are quite evenly weighted if we look only to this case. (We do not know how many others will be affected.)

I would find that defendant's reliance upon the statute and caselaw was justified. Plaintiff knew or should have known that by law he was not covered by workmen's compensation at the time of the injury. Plaintiff's attorney suggests that the Legislature assist the small farmers who relied to their detriment on § 115(d) of the statute. This is not a solution upon which the Court can rely.

The solution lies at our doorstep. I would use it to bring some orderliness and dependability in the legislative and judicial roles which fall upon statutes as a result of our system of checks and balances.

Facts will dictate different dispositions, but when feasible, as here, I would urge applicability of an opinion to the case decided and all like causes arising thereafter. All then are on notice and can be expected to abide by the decision.

In any case, the Court should hereafter carefully consider the possible retroactivity of each suitable decision and plainly state the determined application.

I would reverse the Court of Appeals and affirm the WCAB.