SELLERS v HAUCH

CASAREZ v BROWN & BROWN FARMS

Docket Nos. 103899, 104294, 104314. Submitted June 13, 1989, at Grand Rapids. Decided April 2, 1990. Leave to appeal applied for.

Henry P. Sellers, an agricultural worker employed by Clifford Hauch, sustained injury in a gas explosion at the housing facility provided for him by his employer. Sellers filed a claim for workers' compensation benefits. The Workers' Compensation Appeal Board, in a September 14, 1987, decision, ordered the payment of benefits to Sellers by Hauch and Auto-Owners Insurance Company, Hauch's workers' compensation insurer. While the claim was pending before the WCAB, the Supreme Court, in *Eastway v Eisenga,* 420 Mich 410, decided December 24, 1984, released January 17, 1985, upheld the constitutionality of § 115 of the Workers' Disability Compensation Act, abandoning a ruling it made in a 1972 decision that § 115 was in violation of constitutional guarantees of equal protection in exempting agricultural employers and their workers from the provisions of the workers' compensation act unless they meet certain criteria not required of nonagricultural employers and workers. In making its award of benefits to Sellers, the WCAB ruled that the *Eastway* decision had no effect on Sellers' claim. Hauch and Auto-Owners appealed by leave granted.

Andelia Casarez, an agricultural worker employed by Brown & Brown Farms, fell from a ladder while at work. On the evening of the day of her fall, Casarez was hospitalized and ultimately was diagnosed as having subarachnoid hemorrhaging associated with a ruptured aneurysm. Casarez filed a claim for workers' compensation benefits. The Workers' Compensation Appeal Board, in a September 28, 1987, decision, ordered the payment of benefits, including nursing care, to Casarez by Brown & Brown, Pioneer Insurance Company (Brown's workers' compen-

---

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 17, 121-123, 240, 248, 631, 634.

See the Index to Annotations under Agriculture; Worker's Compensation.

sation insurer) and the Second Injury Fund. In making its award of benefits to Casarez, the WCAB ruled that the *Eastway* decision had no effect on Casarez' claim. Brown & Brown, Pioneer and the Second Injury Fund appealed by leave granted.

The Court of Appeals consolidated the appeals and *held*:

1. The *Eastway* decision is to be accorded partial retroactive application such that workers' compensation benefits already paid prior to the January 17, 1985, release date of *Eastway* remain unaffected by the holding in *Eastway*, but any benefits due but not yet paid pursuant to an award made prior to *Eastway* or an appeal pending before the WCAB on January 17, 1985, shall be determined in accordance with § 115. The Court of Appeals reached this conclusion after considering (1) the purpose to be served by the new rule of law, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.

2. The WCAB did not err in finding a causal nexus between Sellers' injury and his employment. The evidence on the record supports the WCAB's finding that the provision of free housing and Sellers' injury arose out of the employment relationship because Sellers was performing labor for his employer and because the employer needed to ensure Sellers' availability for work.

3. In view of expert opinion testimony that Casarez' fall caused the rupture of the aneurysm, the WCAB did not err in finding that a causal nexus existed between Casarez' injury and her employment.

4. Sufficient evidence exists in support of the WCAB's finding that an award of nursing care benefits to Casarez is warranted.

Reversed and remanded for further proceedings.

1. WORKERS' COMPENSATION — AGRICULTURAL WORKERS.

The decision in *Eastway v Eisenga,* 420 Mich 410 (1984), by which the Supreme Court, notwithstanding its prior decision to the contrary, upheld the constitutionality of § 115 of the Workers' Disability Compensation Act, which section exempts agricultural employers and workers from the provisions of the act unless they meet certain criteria not required of nonagricultural employers and workers, is to be accorded partial retroactive application such that workers' compensation benefits already paid prior to the January 17, 1985, release date of *Eastway* remain unaffected by the holding in *Eastway*, but any benefits due but not yet paid pursuant to an award made prior to *Eastway* or an appeal pending before the Workers' Compensation Appeal Board on January 17, 1985, shall be determined in accordance with § 115 (MCL 418.115; MSA 17.237[115]).

2. WORKERS' COMPENSATION — CAUSE OF INJURY.

    The requisite causal nexus between workplace and injury is satisfied if the injury resulted from the work itself, or from the stresses, the tensions, the associations, of the working environment, human as well as material; thus, if the injury occurred from some aspect of employment, such as employer-provided housing, that provides a direct personal benefit to the employee as well as an indirect benefit to the employer, compensation is not precluded.

3. WORKERS' COMPENSATION — APPEAL.

    Findings of fact made by the Workers' Compensation Appeal Board are subject to limited review by the Court of Appeals; such findings are conclusive in the absence of fraud unless the Court of Appeals is unable to determine that there is any competent evidence supporting them.

*Miller & Miller, P.C.* (by *Jerry L. Miller*), for Henry P. Sellers.

*William G. Reamon, P.C.* (by *William G. Reamon, Sr.,* and *William G. Reamon, Jr.*), for Andelia Casarez.

*Troff, Fisher, Klute, Petzke & Ammeson* (by *Charles Ammeson*), for Clifford Hauch and Auto-Owners Insurance Company.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), for Brown & Brown Farms and Pioneer Insurance Company.

*Frank J. Kelley,* Attorney General, and *Leonard J. Malinowksi,* Assistant Attorney General, for the Second Injury Fund.

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

HOLBROOK, JR., P.J. In *Sellers v Hauch,* defendants appeal by leave granted from a decision of the Workers' Compensation Appeal Board award-

ing plaintiff Henry P. Sellers workers' compensation benefits.

In *Casarez v Brown & Brown Farms,* defendants appeal by leave granted the determination of the WCAB to award plaintiff Audelia Casarez benefits payable by defendants Brown & Brown Farms (plaintiff's employer), the employer's insurance company, and the Second Injury Fund.

Although factually unrelated, both appeals present the common issue of whether to accord retroactive application to the decision in *Eastway v Eisenga,* 420 Mich 410; 362 NW2d 684 (1984). In *Eastway*, the Court upheld the constitutionality of § 115 of the Workers' Disability Compensation Act, MCL 418.115; MSA 17.237(115), notwithstanding that this statute was by previous judicial declarations viewed as unconstitutional because it singled out agricultural workers as a class subject to discriminatory, restrictive terms of eligibility for workers' compensation benefits. Claimants in both cases on appeal are migrant agricultural workers who sustained disabling injuries prior to *Eastway*, but who were awarded benefits by the WCAB in decisions on appeals that were pending on *Eastway's* decision date. Defendants in both cases appeal in this Court to raise a common challenge to the WCAB's rulings limiting *Eastway* to a purely prospective basis and allowing plaintiffs continuing benefits on the basis that the prior judicial rulings of the unconstitutionality of § 115 controlled the claims. In view of the significance of this issue common to both cases, this Court has consolidated the defendants' appeals. In both cases, we now reverse and remand for further proceedings consistent with our analysis of the effect of the *Eastway* ruling on compensation claims pending at the time of its decision.

## I. THE COMMON ISSUE: WHETHER THE HOLDING IN *EASTWAY v EISENGA* SHOULD BE ACCORDED RETROACTIVE APPLICATION.

Section 115 of the workers' compensation legislation severely curtails the eligibility of agricultural workers for workers' compensation benefits by imposing requirements of minimum terms of employment more restrictive than those applicable to nonagricultural workers. More specifically, unlike nonagricultural employees, if plaintiffs, under the strict terms of § 115(d), are to qualify for full benefits as agricultural workers, they must make additional showings that: (1) they were paid hourly wages or salaries, not on a piecework basis, and (2) they were employed for at least thirty-five hours per week for thirteen consecutive weeks during the preceding fifty-two-week period. If the injured worker is unable to meet the terms of § 115(d), he may turn to § 115(e), which provides medical (but no wage loss) benefits to agricultural workers under somewhat less restrictive terms. To qualify for subdivision (e) benefits, the worker must demonstrate that he worked thirty-five or more hours per week for the same employer for at least five consecutive weeks.[1]

Plaintiffs in the instant cases were awarded full

[1] The text of § 115 is as follows:

This act shall apply to:

(a) All private employers, other than agricultural employers, who regularly employ 3 or more employees at 1 time.

(b) All private employers, other than agricultural employers, who regularly employ less than 3 employees if at least 1 of them has been regularly employed by that same employer for 35 or more hours per week for 13 weeks or longer during the preceding 52 weeks.

(c) All public employers, irrespective of the number of persons employed.

(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that

benefits based on the assumption that § 115(d) and (e) were unconstitutional.

In *Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), a majority of the Supreme Court held that § 115, as applied to agricultural workers, violated equal protection because different treatment of agricultural workers vis-a-vis all other workers lacked a rational basis. In *Stanton v Lloyd Hammond Produce Farms,* 400 Mich 135; 253 NW2d 114 (1977), the holding in *Gallegos* was deemed to be fully retroactive on the ground that

same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable.

(e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises of the agricultural employer.

All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act.

Since the WCAB in both cases found that the statute's judicial declaration of constitutionality in *Eastway* was to be applied prospectively and that previous precedent holding it to be unconstitutional was therefore controlling with respect to the instant cases, no specific findings as to whether the plaintiffs' cases meet the eligibility requirements of § 115(d) or (e) were made.

subdivision (d) was constitutionally void ab initio, thereby entitling the plaintiff agricultural worker to both wage loss and medical benefits.

This state of the law was applied by the WCAB in the instant cases. In *Sellers v Hauch,* the date of injury was August 16, 1979. In *Casarez v Brown & Brown Farms,* the date of injury was September 30, 1977. *Eastway,* released January 17, 1985, completely rearranged the prior state of the law by upholding the constitutionality of § 115(d), thereby breathing new life into the more stringent eligibility provisions specific to agricultural workers. The instant cases were pending before the WCAB at the time of the *Eastway* decision. The WCAB advised in its opinion in *Casarez* that the resultant change in the law was without prior intimation by the Supreme Court, coming as a complete surprise to that part of the legal profession devoted to the practice of workers' compensation law.

All defendants rely on *Stanton, supra,* to support their argument for a retroactive application of *Eastway's* effective reinstatement of § 115(d). In holding that the declaration of § 115's unconstitutionality in *Gallegos* was to be retroactively applied to workplace injuries prior in time, the Court reasoned that an unconstitutional statute was a complete nullity dating from the time of its enactment. From this proposition, defendants in the cases at bar argue that it follows that the judicial recognition in *Eastway* of the newly discovered constitutionality of § 115 is likewise entitled to fully retroactive judicial enforcement.

The *Stanton* decision disavowed the usual retroactivity/prospectivity analysis because it perceived the constitutional dimensions of the *Gallegos* holding to be of a different tenor than judicial revisions of the common law:

Defendants claim that *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961),[2] and *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960),[3] support their argument that *Gallegos* should be applied prospectively. However, these two cases are clearly distinguishable from *Gallegos* in that they involve the overruling of established common-law doctrines rather than the constitutional declaration with respect to the validity of a statute. The prospective-retroactive issue is relevant in situations where a previously valid common-law doctrine or prior judicial rule of constitutional interpretation is being abandoned. Such situations are analogous to the amendment or repeal of existing statutes by the Legislature. However, in the instant case we are concerned with the question of whether an unconstitutional statute is to be given any effect, and thus, *Williams* and *Parker* are inapposite. [*Stanton, supra,* pp 145-146.]

However, reading the opinion in its entirety puts the foregoing into perspective. The principle adopted in *Stanton* is not to be applied per se. The Court noted that "certain factual circumstances might warrant the retroactive application of an unconstitutional statute." *Id.,* p 147. Those circumstances encompass notions of hardship and unfairness to those parties who have relied to their detriment on the prior, established state of the law. The Court in *Stanton* further concluded that overriding concerns of fairness dictated that the benefit of retroactive application be given to those

[2] In *Williams,* the trial court dismissed the plaintiff's case on the ground that the cause of action was barred by governmental immunity. This ruling was affirmed by an equally divided Supreme Court, although a majority of the Court concurred in the holding that the common-law doctrine of governmental immunity should be overruled. Only a plurality would have applied that holding on the basis of limited retroactivity to the pending case.

[3] In *Parker,* the Court held that the doctrine of charitable immunity was overruled and then applied that holding to the case pending before it and to future causes of action arising after the date of the filing of the *Parker* opinion.

migrant workers who would otherwise be precluded from workers' compensation. Read in its entirety, the reasoning of *Stanton* permits a flexible application of a change in constitutional doctrine, although constitutional considerations may favor retroactivity in order to cure the deprivation of the plaintiff and others similarly situated. As such, we do not believe that *Stanton* compels full retroactivity in every case where a statute's constitutionality is decided in a fashion different from the previous state of the law. Moreover, unlike *Stanton,* defendants here seek only a vindication of their statutory rights recently held to pass constitutional muster, not a vindication of previously denied constitutional rights, and their argument favoring retroactivity consequently carries considerably less force than those circumstances confronting the plaintiff in *Stanton.*

Aside from the constitutional and jurisprudential theories implicated by this judicial reinvigoration of a statutory nullity, we believe that the bench and bar, as a practical matter, viewed the *Eastway* decision as the onset of a new rule of law. One day the statute was a dead letter; the next day the statute was valid and controlling. Viewed in this light, the application of *Eastway* presents a question no different than any other change in the law effected by judicial pronouncement.

Retroactivity/prospectivity analysis admits a certain degree of judicial flexibility in order to alleviate hardships that could otherwise result, and this Court must take into account the entirety of consequences of a change in law. See *Placek v Sterling Heights,* 405 Mich 638, 665; 275 NW2d 511 (1979). "It is evident that there is no single rule of thumb which can be used to accomplish the maximum of justice in each varying set of circumstances." *Williams, supra,* p 266 (plurality opin-

ion). Although it is stated as a general proposition that full retroactivity is preferred, *Placek, supra,* p 664, recent decisions of our Supreme Court demonstrate that limited retroactivity in its several variations is a common means of implementing changes in the law. *Tebo v Havlik,* 418 Mich 350, 360-361; 343 NW2d 181 (1984). See *People v Allen,* 429 Mich 558, 608-610; 420 NW2d 499 (1988) (impeachment by prior conviction); *DiFranco v Pickard,* 427 Mich 32, 75; 398 NW2d 896 (1986) (standard for determining whether personal injury is a "serious impairment of body function" under the no-fault act); *Stein v Southeastern Michigan Family Planning Project, Inc,* 432 Mich 198; 438 NW2d 76 (1989) (governmental immunity).

Two workers' compensation cases recently decided by our Supreme Court provide a great deal of insight on this issue. In both *Pike v City of Wyoming,* 431 Mich 589; 433 NW2d 768 (1988), and *Riley v Northland Geriatric Center (After Remand),* 431 Mich 632; 433 NW2d 787 (1988), issues of retroactivity/prospectivity were presented in the context of judicial changes in the law. With one exception, the case of *Moore v Detroit Bd of Ed (After Remand),* consolidated for decision in *Riley, supra,* each of the consolidated cases decided in *Pike* and *Riley* had already been adjudicated without further appeal, raising the issue of whether the doctrine of res judicata barred readjustment of benefits otherwise dictated by the new law. Because the instant case is in the procedural posture of a direct appeal from adjudications by the WCAB and the hearing referee, no res judicata question is presented. However, this case is in a posture similar to *Moore, supra,* and, in any event, the retroactivity analysis provided in both *Pike* and *Riley* is appropriate because the analysis of

retroactivity issues appears to be independent of (and unaffected by) res judicata concerns.

In *Pike, supra,* the Court, prior to reaching its retroactivity analysis, invalidated the conclusive presumption of dependency of the wife of an injured employee. MCL 418.353; MSA 17.237(353). *Pike* is significant because the holding is based on equal protection grounds. Those members of the Court reaching the retroactivity question either ignored or overlooked the idea advanced in *Stanton, supra,* that a statute invalidated as unconstitutional must be void ab initio and therefore the invalidation must be fully retroactive.

Similarly, in *Riley, supra,* the Court was confronted with the issue of the proper application of the holding in *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 (1981), that, contrary to the state of the law preceding *Gusler,* the rate adjustment mechanism set forth in MCL 418.355; MSA 17.237(355) applied only to the maximum and not the minimum weekly rate of compensation benefits.

In both *Pike* and *Riley,* the Court was divided on the res judicata issue, leaving only a plurality of justices to reach and decide whether the new rules of law should be applied retroactively. In both opinions, a plurality of three in an opinion authored by Justice GRIFFIN stated that questions of retroactive versus prospective application are to be decided by evaluating and weighing three factors: (1) the purpose to be served by the new rule of law, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. *Pike, supra,* p 603; *Riley, supra,* pp 645-646. The overriding goals are to effectuate fairness and public policy. *Id.,* pp 644-645. Although these principles were noted in plurality opinions, the same are recurrent in other contexts throughout

Michigan law. See, e.g., *People v Kamin,* 405 Mich 482, 494; 275 NW2d 777 (1979); *Hofmann v Auto Club Ins Ass'n,* 162 Mich App 424, 428; 413 NW2d 455 (1987), lv den 430 Mich 852 (1988).

In *Pike,* the plurality applied the three-factor test by noting that the purpose of the new rule (its holding that the conclusive presumption of dependency was unconstitutional) was to uphold equal protection, regardless of the gender of spouses of injured employees. *Id.,* p 604. Because reliance of workers' compensation beneficiaries on the prior settled state of the law was substantial, the interest in the administration of justice would not be furthered by requiring those beneficiaries to return that part of their past benefits attributable to the conclusive presumption of dependency. *Id.*

Similarly, in *Riley,* the plurality noted the purpose of the change in the law to correct a serious error in the interpretation of a statute affecting the amount of compensation paid to injured employees. *Id.,* p 646. In evaluating the reliance factor, the plurality noted that the prior state of the law was relied upon by employers and employees alike for the previous eight years. *Id.* Adoption of a standard of retroactivity that would not affect payment of benefits made prior to the date of announcement of the new rule of law (the date of the *Gusler* decision) would serve to minimize the impact on the administration of justice.

Although different rules of law were analyzed in *Pike* and *Riley,* the same plurality formulated the same approach to limited retroactivity in both cases.[4] The Court concluded that the balance of the factors required retroactive application in the

---

[4] Justice BRICKLEY concurred in the remand in *Pike* and in the plurality's result in *Riley,* but he relied entirely on different reasoning grounded in the doctrine of res judicata. *Pike, supra,* pp 605-609; *Riley, supra,* pp 649-652.

same fashion previously set forth by the Court in *Gusler,* where it was announced:

> In the interest of fairness we do not believe our holding should affect any disability compensation payments already made. Consequently, no recipient will be obligated to repay sums already received by reason of the erroneous computation formula we have nullified today. However, any benefits due and not yet paid or to be awarded after the date of this opinion shall be in accord with this ruling. [*Gusler, supra,* p 298.]

See *Pike, supra,* pp 604-605;[5] *Riley, supra,* p 645.[6]

Arguably the overall approach to issues of retroactivity adopted in *Pike* and *Riley* is distinguished by the fact that the changes in law scrutinized there—the presumption of spousal dependency (*Pike*) and the adjustment of weekly compensation rates (*Riley*)—affected only the amount of compensation benefits, not the more basic inquiry whether the claimant is eligible for any benefit at all. Unlike in *Pike* and *Riley,* the plaintiffs' eligibility for benefits is at issue in the cases at bar. However, we are not persuaded that this distinction should alter the basic approaches to issues of retroactivity outlined in *Pike, Riley,* and other

---

[5] In *Pike,* the Court specifically held:

After weighing all the circumstances, we would hold in the interest of fairness that plaintiff in this case should not be required to repay dependency benefits received prior to the date of this opinion in the event it should be determined that his wife was not in fact a dependent. [*Id.,* pp 604-605.]

[6] In *Riley,* the Court specifically held:

We believe fairness requires that *Gusler* be applied to workers' compensation awards made after December 30, 1981, the date *Gusler* was decided, and to all benefits due and not yet paid after that date where the award preceded the date of the opinion. Such a holding is fair because it allows employers to reduce their payments in accordance with the Legislature's intent while protecting employees with respect to payments received before *Gusler.* [*Id.,* p 645.]

cases advancing the three-factor test. Unlike a conventional adjudication of liability in a civil suit, the workers' compensation scheme envisions that the disabled employee will receive a continuous stream of payments for the purpose of providing income to meet the ongoing needs of life. Entitlement to benefits is not fixed, but rather changes with the changing condition of the employee. When that entitlement is affected by a change in law, a retroactivity analysis taking into account both the fairness and the hardship of applying the new law to the parties is appropriate, regardless of whether the new rule of law affects basic eligibility for benefits or only the amount of benefits.

We apply the three-factor test to the new rule of law announced in *Eastway* reinstating the eligibility requirements of § 115 for agricultural workers. We conclude:

(1) The purpose of the *Eastway* holding was to give effect to the intent of the Legislature in enacting § 115 and to remove a declaration of unconstitutionality thought to be unwarranted by the present composition of the Court. In *Pike,* the plurality noted that the purpose underlying a declaration of a statute's unconstitutionality "would not be advanced by requiring plaintiff to repay dependency benefits already received." *Id.,* p 604. Similarly, the previous assumption of parties affected by workers' compensation law was that § 115(d) and (e) were unconstitutional. Although this assumption may justifiably be thought to have frustrated legislative policy, thereby disfavoring a purely prospective approach, the degree of intrusion onto legislative prerogatives is not so great as to compel repayment of past benefits already received by disabled farm workers in reliance on judicial declarations of § 115's unconstitutionality.

(2) Reliance on the old rule was substantial. In

the intervening twelve years between decisions in *Gallegos* and *Eastway*, it is fair to assume that all concerned viewed § 115(d) and (e) as a nullity and that those affected acted in accordance with legal rights and obligations shaped by the holding of *Gallegos*. Moreover, the WCAB panels in the instant cases noted the difficulty of relitigating matters under the law reinstated by *Eastway*, given the prejudicial effect of the lapse of time upon the availability of evidence. Thus, the reliance interest of the workers affected by the *Eastway* decision is substantial. The WCAB panel in the *Casarez* case at bar also noted that the advent of *Gallegos* afforded many agricultural workers access to the benefits of workers' compensation, but that it concomitantly barred any suit in tort for workplace injuries due to the exclusive remedy provision applicable to those covered by the workers' compensation scheme. See MCL 418.131; MSA 17.237(131). A fully retroactive application of *Eastway* would force those workers to disgorge any benefits realized in consequence of *Gallegos,* but, at the same time, its removal of the exclusive remedy bar would often provide no offsetting benefit because the statute of limitations on any possible tort remedy would likely have already expired. See *Eastway, supra,* pp 425-426 (LEVIN, J., dissenting).

(3) The same considerations compel the conclusion that the administration of justice would not be served by permitting employers to recover past payments of benefits made in reliance on the post-*Gallegos* and pre-*Eastway* state of the law.

We decline to limit *Eastway* to a purely prospective application and further conclude that the WCAB erred in taking this approach. Fairness requires that awards made and benefits paid after the *Eastway* decision be governed by that decision. After the release of *Eastway*, the parties were

justified in reducing or eliminating benefits payable to injured employees consistent with the now constitutional terms of § 115(d) and (e). We adopt the form of limited retroactivity approved in *Gusler, Pike,* and *Riley.* Thus, any benefits already paid prior to the January 17, 1985, release date of *Eastway* remain unaffected by the holding in *Eastway,* but any benefits due but not yet paid pursuant to an award made prior to *Eastway* or an appeal pending before the WCAB on January 17, 1985, shall be determined with reference to § 115 in light of the post-*Eastway* state of the law. We reverse and remand in both cases at bar so that the *Eastway* holding may be implemented consistent with this opinion.[7]

In both cases, it is argued that the plaintiffs failed to prove any entitlement to benefits under the now controlling standard of § 115(d) or (e). Given that *Gallegos* was controlling law at the time of the referee-conducted hearings before the Bureau of Workers' Disability Compensation, it would be surprising if the evidence had focused on the eligibility criteria of § 115. Because the WCAB limited *Eastway* to a prospective application, it also avoided ruling on this question. Therefore, the parties on remand are free to relitigate any question of whether plaintiffs qualify for benefits under § 115, as it now stands in the aftermath of *Eastway.*[8]

---

[7] From a perusal of the records in the instant cases, it appears that plaintiff Sellers received no workers' compensation benefits prior to January 17, 1985, thus precluding him from any further recovery unless he meets the criteria of § 115(d) or (e). During the pendency of the appeal to the WCAB, plaintiff Casarez appears to have received substantial benefits, which were reduced pursuant to MCL 418.862; MSA 17.237(862) in consequence of defendants' appeal. In both cases, however, we leave the ascertainment of the precise amount of payments made prior to January 17, 1985, to be determined in the proceedings on remand.

[8] Unlike the facts of the case decided in *Eastway, supra,* p 423, the

## II. ISSUES SPECIFIC TO *SELLERS v HAUCH*

In the event that plaintiff Sellers is able to reestablish his eligibility for benefits during the proceedings on remand, we address those remaining issues raised in his appeal.

Defendants argue that the WCAB erroneously concluded that the standard of causation was whether Sellers would not have sustained his injury but for his employment relationship and that there is a lack of evidence on the record to support a finding of causation under the proper standard. The requisite causal nexus between workplace and injury is satisfied if the injury resulted from "the work itself, or from the stresses, the tensions, the associations, of the working environment, human as well as material." *Nemeth v Michigan Building Components,* 390 Mich 734, 736; 213 NW2d 144 (1973), quoting *Crilly v Bellou,* 353 Mich 303, 326; 91 NW2d 493 (1958). Thus, if the injury occurred from some aspect of employment that provides a direct personal benefit to the employee as well as an indirect benefit to the employer, compensation is not precluded. *Nemeth, supra* (injury occurring during employee's personal use of employer's saw held to be compensable). In making the determination of whether the evidence proves a sufficient causal nexus, it is relevant to ascertain that the employee would not have gained permission for personal use of the employer's property "but for the employment relationship." *Id.,* p 736. Moreover, accidents occurring during off-work hours in the context of an employee's use of an employer-provided residence are compensable under this principle if it can be said that "the employment is

issue of the instant claimants' noneligibility under § 115(d) or (e) is not "undisputed," but instead was simply left undecided during the proceedings below.

the occasion of the injury." *Whetro v Awkerman,* 383 Mich 235, 243; 174 NW2d 783 (1970). We conclude that the WCAB did not apply an incorrect legal standard.

The standard of review that we apply to findings of the WCAB is limited. Such findings are conclusive in the absence of fraud unless the reviewing court is unable to determine that there is any competent evidence supporting them. *Williams v Chrysler Corp,* 159 Mich App 8, 11; 406 NW2d 222 (1987), lv den 430 Mich 886 (1988).

The WCAB found that the provision of free housing and Sellers' ensuing injury arose out of the employment relationship because Sellers was performing labor for his employer and because the employer needed to ensure Sellers' availability in anticipation of future manpower needs. Because these findings are supported by record evidence, we conclude that the WCAB did not err. See *Flynn v General Motors Corp,* 162 Mich App 511, 513-514; 413 NW2d 444 (1987).

Similarly, we conclude that the WCAB's finding of the continuous nature of Sellers' injury was supported by evidence of the nature and severity of the injuries sustained in the gas explosion and by plaintiff's own testimony. Under the limited standard of review applicable to the findings of the WCAB, we find no error.

### III. ISSUES SPECIFIC TO *CASAREZ v BROWN & BROWN FARMS*

Defendants argue that plaintiff Casarez failed to prove that her disabling head injury was caused by her workplace accident. Casarez was injured on the job when she fell from a ladder. On the same evening as this accident, Casarez was taken to the hospital and ultimately diagnosed as having subar-

achnoid hemorrhaging associated with a ruptured aneurysm. Dr. Joshua Speigel, a neurological surgeon, testified to his opinion that the fall caused the aneurysm to rupture. This opinion was based on Casarez' medical records and the circumstances of the accident. Although other medical experts offered contradictory opinions as to the cause of the rupture, none could conclusively exclude Speigel's explanation.

As we noted with respect to Sellers' appeal, the standard of review applied to the findings of the WCAB is limited. Given Dr. Speigel's testimony, we are precluded from overturning the finding of the majority of the WCAB panel that the accident precipitated Casarez' disabling injury and therefore provided the requisite causal relationship between workplace and injury.

Although the hearing referee decided that plaintiff had failed to demonstrate a need for nursing care as a consequence of her injuries, the WCAB reversed this decision and awarded nursing care benefits. Defendants Brown & Brown Farms and its insurance company argue that the WCAB's decision was not supported by evidence establishing that nursing services were required pursuant to MCL 418.315; MSA 17.237(315). Nursing care benefits should be awarded on the basis of the injured employee's need. *Trejo v Michigan Sugar Co,* 133 Mich App 753, 757-758; 350 NW2d 314 (1984). In this case, the WCAB's finding of reasonable necessity was based on evidence of Casarez' physical limitations and the substantial care and assistance given her by her daughter-in-law. We accept this finding as conclusive because it is supported by competent evidence. Assuming that Casarez is able on remand to establish her eligibility for the medical benefits described in MCL 418.315; MSA 17.237(315), we find no merit to defendant's chal-

lenge to the necessity of nursing care as a component of medical benefits.

In both *Sellers v Hauch* and *Casarez v Brown & Brown Farms,* we reverse and remand for further proceedings consistent with this opinion.

GRIFFIN, J., concurs in the result only.