EASTWAY v EISENGA

Docket Nos. 71532, 71533. Argued May 9, 1984 (Calendar No. 9).—
      Decided December 28, 1984. Released January 17, 1985. Rehear-
      ing denied 421 Mich 1202.

   Steven M. Eastway was granted workers' compensation benefits
      for total and permanent disability as a result of an accident
      which occurred while he was employed on a farm owned by
      Jake Eisenga. The Workers' Compensation Appeal Board af-
      firmed. The Court of Appeals, Cynar, P.J., and Bronson and
      Beasley, JJ., denied leave to appeal (Docket No. 57092). The
      Supreme Court, in lieu of granting leave to appeal; remanded
      the case to the Court of Appeals for consideration as on leave
      granted. 413 Mich 872 (1982). The Court of Appeals, R. B.
      Burns, P.J., and Beasley and Breighner, JJ., affirmed in an
      unpublished opinion per curiam (Docket Nos. 63830, 63831).
      Mr. Eisenga, Hastings Mutual Insurance Company, his insurer,
      and the Second Injury Fund appeal, arguing that the workers'
      compensation act does not apply to agricultural employers such
      as Mr. Eisenga.

      In an opinion by Justice Brickley, joined by Chief Justice
      Williams and Justices Ryan, Cavanagh, and Boyle, the Su-
      preme Court held:

      Classifications in the workers' compensation act between
      agricultural employers and other employers are rationally
      related to the permissible goal of recognizing the economic
      uniqueness of agricultural employers and do not violate the
      right of equal protection of the law.

      1. The workers' compensation act is primarily social and
      economic legislation, involving property and not fundamental
      rights, and thus is subject to review under the rational basis
      standard. The burden is on the person challenging a classifica-
      tion under the act to show that it lacks reasonable justification,
      and the classification will be set aside only if there are no facts
      which can reasonably be conceived to justify it.

      2. Under § 115, the Legislature has exempted agricultural
      employers from provisions of the act unless they employ three

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 81 Am Jur 2d, Workmen's Compensation §§ 17, 121.
[2-4] 81 Am Jur 2d, Workmen's Compensation § 122.

or more regular employees thirty-five or more hours per week for thirteen or more consecutive weeks out of the preceding fifty-two weeks. In addition, under § 115, agricultural employers who employ one or more employees thirty-five or more hours per week for five or more consecutive weeks are required to provide medical and hospital coverage for injuries arising in the course of employment where the employee is not otherwise covered under the act. Such classifications are rationally related to the permissible goal of recognizing the economic uniqueness of Michigan agricultural employers. Because the plaintiff failed to show that the classification between agricultural employers and other employers bore no rational relation to a legitimate legislative goal, the classification is constitutionally sound and does not violate his right to equal protection of the law. Because the defendant did not employ three or more regular workers at the time of the plaintiff's injury under circumstances that would cause the act to apply, the defendant is exempt from the provisions of the act, rendering the plaintiff ineligible for benefits.

Reversed and remanded.

Justice Levin, joined by Justice Kavanagh, dissenting, stated that it is inappropriate to overrule the decision of the Supreme Court in *Gallegos v Glaser Crandell Co,* 388 Mich 654 (1972), on the ground that *Gallegos* was decided on an issue not necessary to the resolution of the case or without a lower court record because:

i) the Court in *Gallegos* concluded that the analysis in the separate opinion of the subclassification "agricultural workers" established by the exceptions in the act was not factually supported and that conclusion was not clearly erroneous;

ii) *Gallegos* did not depend on a factual basis in a lower court record; the Court found, rather, that there was not a factual basis for the "piecework" analysis which the majority in this case states made it unnecessary for the Court in *Gallegos* to reach the broader issue; and

iii) the defendants in this case did not raise the question whether *Gallegos* should be overruled.

The majority states that any portions of *Gallegos* inconsistent with its opinion are overruled. The inference is that *Gallegos* may still govern where the farm worker is "paid by the piece" and is not a seasonal agricultural worker, *i.e.,* he is employed 35 or more hours per week by the same employer for 13 or more consecutive weeks during the preceding 52 weeks. The majority does not, however, state a doctrinal basis for such a rule, and, as it recognizes, a majority of the Court in *Gallegos*

declared that it could not adopt an analysis that would provide a basis for such a rule. Thus, if *Gallegos* survives to that extent, it does so by fiat without a doctrinal basis in which a majority of this Court has joined.

*Gallegos* should not be overruled unless and until the question is presented and there is the resulting notice to persons who might be affected by the decision. Overruling *Gallegos* might enable an agricultural employer with a large workforce to avoid the application of the workers' compensation act.

The exclusive remedy bar of the workers' compensation act protects agricultural employers subject to the provisions of the act from personal injury actions that might otherwise be commenced by injured workers. The fallout from an overruling of *Gallegos* is unclear. The majority notes that injured farm workers not covered by the workers' compensation act retain the common-law right to sue their employer. The Court should adopt without delay an amendment to the court rules, or an administrative order, that tolls until the announcement of the overruling decision, the statutes of limitations on actions against agricultural employers—relieved by the majority's decision of workers' compensation liability—heretofore barred by this Court's decision in *Gallegos* which had the effect of making the exclusive remedy provision applicable to agricultural employment.

Under the Court's decision in *Gallegos,* the workers' compensation act applies to agricultural employers who regularly employ three or more employees. The provisions of the workers' compensation act which attempted to differentiate between employers of three or more regular employees and agricultural employers of three or more employees were held to be unconstitutional as violative of equal protection. Thus, the differentiation being invalid, the act applies to agricultural employers who regularly employ three or more employees. In this case, it is unclear whether Mr. Eisenga regularly employed three or more employees at one time, requiring remand to the WCAB for clarification of the number of employees, other than resident family members, regularly employed at one time. If it is determined that Mr. Eisenga did regularly employ three or more employees at one time, it would be unnecessary to determine the effect of the provisions of the act that exclude resident family members from consideration as employees.

Opinion of the Court

1. Workers' Compensation — Agricultural Workers — Equal Protection.

Classifications in the workers' compensation act between agricul-

tural employers and other employers are rationally related to the permissible goal of recognizing the economic uniqueness of agricultural employers and do not violate the right of equal protection of the law (MCL 418.115; MSA 17.237[115]).

2. WORKERS' COMPENSATION — AGRICULTURAL WORKERS — EQUAL PROTECTION.

Agricultural employers who do not employ three or more regular workers thirty-five or more hours per week for thirteen or more consecutive weeks out of the preceding fifty-two and who pay the workers a salary or by the hour rather than on the basis of piecework, or who employ one or more workers thirty-five or more hours per week for five or more consecutive weeks, are exempt from the provisions of the workers' compensation act (MCL 418.115; MSA 17.237[115]).

DISSENTING OPINION BY LEVIN, J.

3. WORKERS' COMPENSATION — AGRICULTURAL WORKERS.

*The workers' compensation act should apply to agricultural employers who regularly employ three or more employees (MCL 418.115; MSA 17.237[115]).*

4. WORKERS' COMPENSATION — AGRICULTURAL WORKERS — EQUAL PROTECTION.

*Differentiation between employers of three or more regular employees and agricultural employers of three or more regular employees for purposes of the applicability of the workers' compensation act is unconstitutional as violative of equal protection (US Const, Am XIV; Const 1963, art 1, § 2; MCL 418.115; MSA 17.237[115]).*

*Williams, Klukowski, Drew & Fotieo, P.C.* (by *Paul A. Williams),* for the plaintiff.

*Baxter & Hammond* (by *James R. Piggush)* for defendants Eisenga and Hastings Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for the Second Injury Fund.

BRICKLEY, J. In this case we must decide

whether MCL 418.115; MSA 17.237(115) violates the Equal Protection Clauses of the state or federal constitutions[1] by partially excluding plaintiff's employer from coverage under the Worker's Disability Compensation Act and thereby denying plaintiff the ability to make a claim for disability benefits.

Plaintiff first worked for defendant in 1967. During the next few years plaintiff intermittently worked for defendant, mainly during haying and potato seasons.[2] In the spring of 1969, plaintiff worked a couple of Saturday afternoons cultivating fields for defendant. In June of the same year plaintiff worked 2 to 3 days per week, 5 to 7 hours per day for defendant while working part time for another employer. Throughout that summer plaintiff worked 4 to 5 hours per week for defendant while also holding other jobs. In late August or early September, plaintiff began working full time for a Mr. Johnson. While still working for Johnson, plaintiff worked one day for defendant during potato season. On that day, September 30, 1969, plaintiff, then age 18, was injured.

The injury occurred when the plaintiff was caught in a self-loading wagon. As a result of the accident, plaintiff is a quadriplegic confined to a wheelchair. Plaintiff was eligible for lifetime medical benefits which have been supplied and are not at issue in this appeal. MCL 418.115(e); MSA 17.237(115)(e).

---

[1] Const 1963, art 1, § 2; US Const, Am XIV. The plaintiff merely argues that *Gallegos* v *Glaser Crandell Co*, 388 Mich 654; 202 NW2d 786 (1972), applies to this case. Defendant, however, argues that *Gallegos* does not apply or, alternately, that the classification included here is constitutionally permissible. The Court of Appeals based its holding on the Fourteenth Amendment to the United States Constitution. Our conclusion is the same under either.

[2] The first haying season begins near the end of June and lasts 2 to 2-1/2 weeks. The second haying season occurs in late August and lasts approximately one week. Potato season starts at the end of September and continues for 2 to 2-1/2 weeks.

Defendant's two sons also worked for him. The elder, Bruce, owned his own farm in 1969, but still worked 10 to 20 hours per week for defendant and was paid a salary. The other son, Nelson, lived on defendant's farm and worked there full time for a salary. When Nelson was away for five months in the National Guard, a neighbor worked 3 to 4 hours per day for defendant.

Two haying seasons occurred each year on defendant's farm. During the first, defendant hired 4 to 5 full time employees for a 2 to 3 week period. Later in the year defendant would hire the same number of full time employees for approximately one week. During potato season defendant hired 8 to 10 people who worked approximately 20 hours per week for 2 to 2-1/2 weeks.

In 1977, the hearing referee awarded disability benefits on the basis of his understanding that *Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), held that the agricultural exclusion in § 115 was unconstitutional. The WCAB affirmed the referee in 1981, but substituted the board's own narrative findings. Each member interpreted *Gallegos* differently, but all concurred in affirming the award of benefits.

The Court of Appeals denied defendant's application for leave to appeal. Judge CYNAR voted to grant the application. This Court subsequently remanded the case to the Court of Appeals for consideration as on leave granted. GCR 1963, 853.2(4); 413 Mich 872 (1982).

The Court of Appeals, in an unpublished opinion per curiam, decided April 1, 1983 (Docket Nos. 63830, 63831), affirmed the decision of the WCAB. The Court interpreted *Gallegos* to mean that "all distinctions between private and agricultural employers violate the equal protection clause of the Fourteenth Amendment." The Court struck the

words, "other than agricultural employers" from MCL 418.115(a), (b); MSA 17.237(115)(a), (b). It found that plaintiff was injured during a period in which the defendant regularly employed three or more employees at one time.[3] Thus, it determined that at the time of the injury defendant was an employer subject to the act under § 115(a) as modified. The defendant and the Attorney General, appearing on behalf of the Second Injury Fund, applied for leave to appeal to this Court. We granted leave to appeal, 418 Mich 881 (1983), and now reverse.

The statute at issue in this case, MCL 418.115; MSA 17.237(115), provides:

"Sec. 115. This act shall apply to:

"(a) All private employers, other than agricultural employers, who regularly employ 3 or more employees at 1 time.

"(b) All private employers, other than agricultural employers, who regularly employ less than 3 employees if at least 1 of them has been regularly employed by that same employer for 35 or more hours per week for 13 weeks or longer during the preceding 52 weeks.

"(c) All public employers, irrespective of the number of persons employed.

"(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately

---

[3] In light of our holding, we find it unnecessary to decide whether defendant regularly employed three or more employees at one time within the meaning of § 115(a) at the time of plaintiff's injury.

preceding the injury, and no other definition pertaining to average weekly wage shall be applicable.

"(e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises of the agricultural employer.

"All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act."

In *Gallegos,* the plaintiffs also challenged the constitutionality of § 115(d). There the plaintiffs were migrant workers employed to harvest cucumbers. They were compensated on a piecework basis and were injured during their employment. The WCAB denied each plaintiff's claim for benefits on the authority of the piecework exclusion and correctly ruled that it did not have the authority to decide the constitutional question.

The Court of Appeals granted plaintiffs' application for leave to appeal and subsequently affirmed the decision of the WCAB. *Gallegos v Glaser Cran-*

*dell Co,* 34 Mich App 489; 192 NW2d 52 (1971).
The Court stated the issue before it as follows:

"The precise question then is whether the creation of classes within the act, thereby allowing for coverage to permanent salaried or wage-earning [farm] laborers while denying coverage to temporary piecework laborers (such as migrant workers) is such unreasonable and arbitrary discrimination as to deny the latter equal protection of the laws guaranteed by the [state and federal constitutions]." 34 Mich App 491-492.

After deciding that the plaintiffs' rights to travel were not violated, the Court further held that "it cannot be said that the legislative decision to amend the act so as to include certain farm laborers while continuing to exclude others was arbitrary or totally without reason." *Id.,* p 497. Finally, the *Gallegos* Court of Appeals stated: "In upholding the constitutionality of [§ 115(d)(3)] *i.e., the exclusion of piecework farm laborers,* we in no way imply approval of the [legislative treatment of migrant workers]." *Id.,* p 498.

This Court granted leave to appeal in *Gallegos* and "the arguments of appellants and appellee [each] posit[ed] the issue as piecework." (WILLIAMS, J., *concurring in part and dissenting in part,* 388 Mich 676.) Specifically, in *Gallegos* the "[p]laintiffs argue[d] that the exclusion from workmen's compensation benefits of those agricultural workers who are paid on a piecework basis * * * denies those workers the equal protection of the laws." (T. G. KAVANAGH, J., *concurring in result, id.,* p 670.)

The majority in *Gallegos* held that "the provisions of § 115(d) * * * violate[d] the plaintiffs' rights to equal protection" under the state and federal constitutions. *Id.,* p 659. Notwithstanding the narrow issue before the Court, the bulk of the

majority opinion discussed the different treatment given agricultural employers and nonagricultural employers under § 115 generally. The majority stated that its "difficulty [was] with the classification of agricultural employers" because "[a]gricultural employers * * * are accorded a special treatment and classification of their employees not accorded any other private or public employer." It thus held: "[s]uch treatment is impermissible, clearly discriminatory, and has no rational basis." *Id.,* p 668. Plaintiff in the case at bar argues that "[t]his language demonstrates beyond dispute that the *Gallegos* Court moved to strike down *all* distinctions based on the classification of agricultural employers." Plaintiff concludes that *Gallegos* means that agricultural employers "must provide coverage to the same extent and under the same circumstances as non-agricultural employers."

Clearly, it was not necessary for the majority in *Gallegos* to decide whether it is permissible for the Legislature to distinguish between the two types of employers in order to decide whether employees paid by the piece and those paid by wages may be treated differently. Nonetheless, the majority did so hold. We now find that because *Gallegos* was decided on issues not necessary to the resolution of the case and without a lower court record or briefing on the broader issue of distinctions between employers, it is now necessary to undertake a further analysis of that issue. Our inquiry, then, is whether the Legislature may exempt from the WDCA certain agricultural employers without violating plaintiff's right to equal protection of the law.

The standard of review for social and economic legislation generally is applicable to evaluate provisions of the workers' compensation act in question here. *Johnson v Harnischfeger Corp,* 414 Mich

102, 113; 323 NW2d 912 (1982). This legislation is primarily social and economic, involving property rights, not fundamental rights, and is so subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. The statute will be set aside only if there is not any set of facts which can reasonably be conceived to justify it. *McAvoy v H B Sherman Co*, 401 Mich 419, 453; 258 NW2d 414 (1977). Where the legislative judgment is drawn in question by an equal protection challenge, a court's inquiry must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. Thus, we must uphold the validity of § 115 unless plaintiff bears his burden of showing that the classification therein is arbitrary and does not bear a rational relation to the object of the legislation. *Johnson, supra,* p 113.

Michigan's first workers' compensation statute was 1912 (1st Ex Sess) PA 10. Under the act, farm laborers, domestic servants and casual workers were treated differently than all other employees. 1912 (1st Ex Sess) PA 10, § 2. In 1943, farm laborers were expressly excluded from coverage under the workmen's compensation act. 1943 PA 245, § 2a.[4] In 1965, the Legislature revised much of the workmen's compensation act, including the section which has since evolved into § 115. 1965 PA 44, § 2a. The 1965 version of the agricultural exclusion is essentially similar to § 115 with respect to the provisions at issue in this litigation. The legislative intent as to 1965 PA 44, § 2a, is accordingly relevant to a determination of the

---

[4] Under 1943 PA 245, § 2a, employers of farm laborers could voluntarily bring their employees under the workmen's compensation act by·purchasing a valid compensation insurance policy for their benefit.

purposes and object of the current partial agricultural exclusion.

Prior to the 1965 revision, a concurrent resolution was adopted by the House of Representatives and Senate authorizing a joint special interim committee to investigate and study the entire structure of the workmen's compensation system in Michigan. The committee report stated the following with respect to agricultural employees:

"The Committee received substantial testimony, both pro and con, with respect to covering additional labor by the Act. At the present time both agricultural and domestic servant labor can be covered on a voluntary basis. Reports indicate that the total year-round farm labor force in the State of Michigan, including family help and hired labor, is approximately 149,500 persons. This figure, however, includes farmers themselves, farm wives, sons, daughters, and other relatives. It appears that the aggregate number of full time hired farm workers is between three and five thousand persons. The Committee heard testimony alleging that the *costs would be prohibitive* to bring all agricultural workers within the Compensation Act. However, there is a strong argument for bringing *permanent agricultural employees* and domestic servants under the purview of the compensation law. It is the recommendation of the Committee that consideration be given to additional coverage for these groups." 1965 Journal of the House, pp 77-78. (Emphasis added.)

Thus, it appears that the Legislature exempted certain smaller agricultural employers from WDCA coverage because it believed that coverage would create an undue economic burden on them. The Legislature further intended to bring larger agricultural employers and their permanent full time employees under coverage. All other private employers are covered if they regularly employ three or more employees at one time or if they

have regularly employed one person for 35 or more hours a week for 13 weeks or longer during the preceding 52 weeks. § 115(a), (b). We are required to uphold the validity of § 115 if the employer classifications are rationally related to the purpose of preventing undue hardship to agricultural employers by exempting them from the WDCA in certain circumstances.

We hold that the classifications drawn by the statute are rationally related to the permissible goal of recognizing the economic uniqueness of Michigan's agricultural employers.

The Legislature could have reasonably concluded that agricultural employers needed to be protected from the additional overhead of workers' compensation insurance premiums.[5] The Legislature could have further decided that an excessive administrative burden on small agricultural employers would result if WDCA coverage were required. The casual and often familial nature of agricultural employment might make it administratively onerous for small agricultural employers to determine which employee should be covered. For example, small farmers often trade labor between themselves, friends, neighbors, and family. Requiring the small farmer to keep records on and insure each casual or temporary employee could effect a serious drain on time and resources.

The wisdom of this policy of partial agricultural exclusion is not before us, nor is the question whether a similar exclusion should have also been given to other small businesses. It is settled that

[5] The argument that this separate classification of agricultural employers is necessarily a deprivation of the employee's rights is debatable in view of the fact that the workers' compensation system involves a tradeoff of the employees relinquishing their common-law tort remedies in favor of the lesser burden of establishing a valid claim for benefits. Agricultural employees not covered by the WDCA, of course, retain the common-law right to sue their employer.

legislation will not fall merely because the Legislature does not address all evils at one time. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 542; 273 NW2d 829 (1979).

The lawmakers could also consider the fact that farmers, unlike those in other sectors of the economy, ordinarily have no power to raise their prices to absorb the additional overhead costs occasioned by premium costs of workers' compensation insurance. *Ross v Ross,* 308 NW2d 50, 53 (Iowa, 1981).

Since the plaintiff has failed to show that a separate classification for agricultural employers in § 115 bears no rational relationship to a legitimate legislative goal, we hold that the challenged classification is constitutionally sound and does not violate plaintiff's right to equal protection of the law.

Any portions of *Gallegos* inconsistent with this opinion are hereby overruled.

Turning to the statute as applied to the instant case, we find that the facts are undisputed. The defendant did not have three or more regular employees who had worked 35 or more hours per week for 13 consecutive weeks prior to the accident. § 115(d). The last sentence of § 115 provides in part: "All other agricultural employers not included in [§ 115(d), (e)] shall be exempt from the provisions of [the WDCA]." Hence, except as the parties have agreed with respect to medical benefits under § 115(e), the defendant was exempt from coverage under the WDCA at the time of the injury, thereby rendering the plaintiff ineligible for benefits.

Reversed and remanded.

No costs as a public question is involved.

WILLIAMS, C.J., and RYAN, CAVANAGH, and BOYLE, JJ., concurred with BRICKLEY, J.

CLERK'S NOTE: The following opinion was filed December 28, 1984, but was revised after the signing of the majority opinion.

LEVIN, J. *(dissenting)*. It is, in our opinion, inappropriate to overrule the decision of this Court in *Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), on the basis that *Gallegos* was decided on,

i. an "issue not necessary to the resolution of the case," or

ii. "without a lower court record," under the circumstances that,

i. The Court in *Gallegos* concluded that the subclassification analysis proffered by Justice THOMAS G. KAVANAGH was not factually supported and that conclusion was not clearly erroneous, and

ii. The basis of decision in *Gallegos* did not depend on a factual basis in a "lower court record"; the Court in *Gallegos* found rather that there was *not* a factual basis for the "piecework" analysis which the opinion of the Court today states made it unnecessary for the Court in *Gallegos* to reach the "broader issue," and

iii. The appellants in the instant case did not raise the question whether the decision in *Gallegos* should be overruled before the WCAB or the Court of Appeals or in their application for leave to appeal to this Court; and the Statement of Questions Involved does not set forth or necessarily suggest that *Gallegos* should be overruled. (See fn 13.)

The opinion of the Court adverts to the analysis and opinion of Justice KAVANAGH in *Gallegos,* but omits from the quotation from his opinion the words "and those agricultural workers who do not

work 35 or more hours per week for the same
employer for 13 or more consecutive weeks," *i.e.,*
seasonal agricultural workers. Eastway, although
not a migrant worker, was a seasonal worker.
Eastway would be covered by the workers' com-
pensation act under the analysis of Justice KAV-
ANAGH'S opinion.

*Gallegos* may indeed have been incorrectly de-
cided. It should not be overruled, however, unless
and until the question is duly presented and there
is the resulting notice to persons who might be
affected by an overruling decision.

The Court states that "[a]ny portions of *Gallegos*
inconsistent with this opinion are hereby over-
ruled." The inference is that *Gallegos* is not over-
ruled in its entirety; although not stated, *Gallegos*
may still govern where the farm worker is "paid
by the piece" and is not a seasonal agricultural
worker, *i.e.,* he is employed 35 or more hours per
week by the same employer for 13 or more consec-
utive weeks during the preceding 52 weeks. The
Court does not, however, state a doctrinal basis for
such a rule, and, as the Court recognizes, a major-
ity of the Court in *Gallegos* declared that it could
not adopt an analysis that would provide a basis
for such a rule. Thus, if *Gallegos* survives to that
extent, it does so by fiat without a doctrinal basis
in which a majority of this Court has joined. (See
fn 13.)

The effect of today's overruling decision is not
limited to persons employed by "small family
farmers." Overruling *Gallegos* might enable an
agricultural employer with a large workforce to
avoid the application of the workers' compensation
act. (See fn 17.)

The exclusive remedy bar of the workers' com-
pensation act protects agricultural employers sub-
ject to the provisions of the act from personal

injury actions that might otherwise be commenced by injured workers. The fallout from an overruling of *Gallegos* is unclear. Although only this Court can overrule *Gallegos,* there should be at least a "first" or "second" reading before we address the question.

The opinion of the Court notes that injured farm workers not covered by the workers' compensation act "retain the common-law right to sue their employer." The Court should adopt without delay an amendment to the court rules, or an administrative order, that tolls (see *Mair v Consumers Power Co,* 419 Mich 74; 348 NW2d 256 [1984] [Levin, J., *dissenting]),* until the announcement of today's overruling decision, the statutes of limitations on actions against agricultural employers— relieved by today's decision of workers' compensation liability—heretofore barred by this Court's decision in *Gallegos* which had the effect of making the exclusive remedy provision applicable to agricultural employment.

# I

In *Gallegos* this Court held that § 115(d) of the workers' compensation act,[1] providing in what cir-

---

[1] "Sec. 115. This act shall apply to:

"(a) All private employers, other than agricultural employers, who regularly employ 3 or more employees at 1 time.

"(b) All private employers, other than agricultural employers, who regularly employ less than 3 employees if at least 1 of them has been regularly employed by that same employer for 35 or more hours per week for 13 weeks or longer during the preceding 52 weeks.

"(c) All public employers, irrespective of the number of persons employed.

"(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks

cumstances the act applies to agricultural employees, was violative of the Equal Protection Clauses of the Constitutions of the United States and of this state.[2]

Jake Eisenga, a farmer, Hastings Mutual Insurance Company, his insurer, and the Second Injury Fund contend that the holding in *Gallegos* should be limited to migrant workers or to persons not employed on a family farm, and that the Court of Appeals[3] erred in affirming the decision of the Workers' Compensation Appeal Board[4] awarding Steven M. Eastway workers' compensation disability benefits. We would affirm.

worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable.

"(e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises of the agricultural employer.

"All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act." MCL 418.115; MSA 17.237(115).

[2] "[T]he provisions of § 115(d) of the 1969 PA 317 (MCLA 418.115[d]; MSA 17.237[115][d]), violate plaintiffs' rights to equal protection provided for in the Constitutions of the United States and the State of Michigan." *Gallegos v Glaser Crandell Co,* 388 Mich 654, 659; 202 NW2d 786 (1972).

[3] *Eastway v Eisenga,* unpublished opinion per curiam of the Court of Appeals, decided April 1, 1983 (Docket Nos. 63830, 63831).

[4] 1981 WCABO 629.

## II

Section 115 of the workers' compensation act provides in subsection (a) that the act applies to all private employers, other than agricultural employers, "who regularly employ three or more employees at one time."[5] Subsection (d) of § 115 provides that the act applies to an agricultural employer who so employs 3 or more regular employees at 1 time if (i) they are "paid hourly wages or salaries, and not paid on a piecework basis," (ii) they are employed "35 or more hours per week by that same employer for 13 or more *consecutive* weeks during the preceding 52 weeks" (emphasis supplied), and (iii) the person seeking compensation is such a "regularly employed employee."[6]

This Court noted in *Gallegos* that subsection (d) (agricultural employers of three or more employees) parallels subsection (a) (other employers who regularly employ three or more employees), and that subsection (e) (agricultural employers of one employee for 35 hours per week for 5 consecutive weeks) parallels subsection (b) (other employers who regularly employ one employee for 35 hours per week for 13 weeks).[7] Under subsection (e), the agricultural employer of one or more employees for 35 hours per week for 5 consecutive weeks is obliged to provide medical and hospital coverage but—in contrast with subsection (b) concerning other employers who regularly employ one employee for 35 hours per week for 13 weeks—not disability payments; the agricultural employee may pursue his common-law remedy against his

---

[5] See fn 1.

[6] See fn 1.

[7] "Agricultural employers are dealt with in section 115(d) and (e), MCLA 418.115; MSA 17.237(115). Sections 115(d) and (e) (all agricultural employers), parallel sections 115(a) and (b) (all private employers)." *Gallegos v Glaser Crandell Co, supra,* p 661.

employer. And under subsection (e), "[n]o person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family * * * residing in the home or on the premises of the agricultural employer." The act further provides that agricultural employers not included under subsections (d) and (e) are exempt from the provisions of the act.[8]

Eisenga, his insurer, and the Second Injury Fund note that the injured workers in *Gallegos* were migrant workers who had worked for less than 35 hours per week for 13 consecutive weeks and argue that while *Gallegos* held subsection (d), concerning agricultural employers of three or more regular employees, unconstitutional it did not hold the clauses of subsections (a) or (b) stating "other than agricultural employers" or subsection (e) to be unconstitutional, and that subsection (e)— as well as subsection (d)—reflects a legislative policy to exempt the family farm from coverage under the act.

After *Gallegos* was argued, the case was assigned for opinion writing to Justice THOMAS G. KAVANAGH who submitted an opinion which posited the validity of differential treatment of industrial and agricultural employment, but would have held that subsection (d) was violative of the Equal Protection Clause as applied to the subclassification of seasonal agricultural workers who otherwise would have been covered and who worked less than 35 hours per week for 13 consecutive weeks or who were not compensated on an hourly or salary basis.[9] Justice PAUL ADAMS submitted an

---

[8] See fn 1.

[9] "We are not here concerned with the division of workers into 'industrial' and 'agricultural' classes. We posit the reasonableness of such classification in order to consider the propriety of the subclassification of 'agricultural' workers which results from the exclusion of

certain of them from coverage. We note that the exceptions contained
in the statute do establish two separate subclasses—those agricultural
workers covered by the act and those not covered by the act on
account of such exceptions. It is not disputed that this latter group
are seasonally employed and we will hereafter refer to them as
'seasonal workers'." *Gallegos v Glaser Crandell Co, supra* (KAV-
ANAGH, J., *concurring),* pp 670-671.

"The classification in Michigan's statute however appears to have a
rational basis in light of the difficulty of administering the act
involving such a mobile labor force. In this circumstance we must
look to its impact. A court is not confined to a sterile examination of
the statute itself, but must look to its effect." *Id.,* p 672.

"It is not disputed that the classification established by the excep-
tions contained in Michigan's Workmen's Compensation Act which we
are considering here—seasonal agricultural workers—is largely com-
posed of Chicanos, Blacks and American Indians." *Id.,* pp 672-673.

"No compelling governmental interest that would justify the exclu-
sion from workmen's compensation of those agricultural workers who
are paid on a piecework basis and those agricultural workers who
work less than 35 hours per week and/or 13 consecutive weeks for
the same employer has been demonstrated." *Id.,* pp 673-674.

"We conclude that no compelling state interest has been shown.
Therefore, those portions of the statute excepting piecework employe-
es, and those excepting persons not employed 35 hours a week for 13
consecutive weeks for the same employer are in violation of US Const,
Am XIV and Const 1963, art 1, § 2. Therefore these sections are
stricken from the statute." *Id.,* pp 674, 675.

Justice WILLIAMS concurred in part and dissented in part from both
Justice KAVANAGH's concurring opinion and the majority opinion. He
agreed with Justice KAVANAGH that the subclassification in § 115(d)
"creating a difference between piecework and wage remuneration for
employees doing similar work under otherwise similar conditions is
violative of equal protection. [He did] not believe it is necessary,
however, to say this subclassification does not further a compelling
governmental interest because [he viewed] this subclassification as
altogether unreasonable and lacking in rational basis." *Gallegos v
Glaser Crandell Co, supra* (WILLIAMS, J., *concurring),* p 675. He said,
however, that "the facts presented in the briefs are not, in my
opinion, sufficiently comprehensive to establish a suspect classification
especially in light of the absence of any findings of fact at all on this
issue *on the record."* (Emphasis in original.)

He disagreed with the majority because he could not "agree com-
pletely with Justice ADAMS that all classifications of agricultural
workers differ from other kinds of workers is unsupported by a
rational basis. There are some differences between § 115(a) vis-à-vis
§ 115(d) and § 115(b) vis-à-vis § 115(d) that may not be supported by a
rational basis but it may be that other differences are supportable by
some rational basis if properly argued." *Id.,* p 676.

Justice BRENNAN dissented and said:

"The categories established do not discriminate against migrant
farm workers. Indeed, subsection 115(e) provides a special remedy for

opinion, which became the opinion of the Court when it was signed by a majority of the justices, which rejected that analysis and held that the differential treatment of industrial and agricultural employment was violative of the Equal Protection Clause of the federal and state constitutions.[10]

---

migrant farm workers which is not provided for non-agricultural workers.

"It is obvious that the Legislature has attempted to draw a line between small farms (subsection 115[e]) and big farms (subsection 115[d]). Big farms are treated exactly like any other employer—agricultural or non-agricultural. Little farms, unlike little gas stations, little stores or casual residential employers, are required to carry medical insurance under § 315.

"Thus, if I employ a handyman to work around my house for six weeks, I am not subject to the Workmen's Compensation Act. (Section 118[2].) If a farmer puts on a hired hand for the same length of time, medical and hospital coverage must be provided. Where is the discrimination?" *Gallegos v Glaser Crandell Co, supra* (Brennan, J., *dissenting*), pp 678-679.

[10] "There are no facts *in this record* from which I can conclude that the classification established by the exceptions contained in the Michigan Workmen's Compensation Act—'seasonal agricultural workers—is largely composed of Chicanos, Blacks and American Indians.' Nor is there in this record a basis for a finding that: 'Seasonal agricultural workers comprise one of the poorest segments of our society. The majority of these workers have earnings which are below the poverty level.' All of these 'facts' may be true but they are not facts of which this Court, at this stage in the proceedings, can properly take judicial notice. No effort was made to place these 'facts' in the record by requesting that the hearing referee take judicial notice of them or by some other proof. No opportunity was afforded defendant to except to or controvert the taking of judicial notice of these 'facts'. To do so now solely on the basis of assertions contained in briefs would be improper since these 'facts' are not of such certainty as to permit taking judicial notice of them for the first time in an appellate court. See *Winekoff v Pospisil,* 384 Mich 260, 268-269 [181 NW2d 897] (1970).

"Our examination must be confined to the Workmen's Compensation Act of 1969 (1969 PA 317)." (Emphasis in original.) *Gallegos v Glaser Crandell Co, supra,* pp 659-660.

"Turning back to the present case, from an examination of the definition of 'agricultural employer' (section 155[1]), it will readily be seen that it includes all possible kinds of work 'on a farm,' such as plowing, planting, harvesting, maintenance of machinery, bookkeeping, processing, canning, raising cattle or other livestock. The work can vary from the most menial (digging ditches) to the most exacting (expert cross-pollination of plants or flowers) as long as it is 'on a farm.'

While some might conclude that Justice KAV-
ANAGH's analysis was both preferable and support-
able, the majority of this Court did not err in
*Gallegos* in concluding that the subclassification
analysis of Justice KAVANAGH was not factually
supported and that, therefore, the Court was re-
quired to decide whether the differential classifica-
tion of industrial/agricultural employment was
constitutional. The decision of this Court in *Galle-
gos* that the differential classification of industrial/
agricultural employment was unconstitutional[11]
was accordingly not obiter dictum, but rather was
necessary to decision and is binding on this Court
under the doctrine of stare decisis unless and until
overruled.[12] While defendants no doubt would wel-

---

"There is no basis for distinguishing the work of a laborer who
drives a truck at a factory from a laborer who drives one on the farm
or for any one of numerous other labor activities 'on the farm' as
distinguished from the same activity in industry, wholesaling, retail-
ing, or building. There is no basis for singling out for an exclusion
piecework 'on the farm' but not elsewhere. There is no basis for a
special definition of 'weekly wage' for farm labor as distinguished
from any other type of labor. 'All private employers' come under the
act if they regularly employ three or more employees at one time. On
the other hand, only 'agricultural employers' who employ 3 or more
employees, not on piecework, 35 or more hours per week by the same
employer for 13 or more weeks during the preceding 52 weeks come
under the act." *Id.,* pp 666-667.

"From the above, it will be seen that while Justice T. G. KAVANAGH
posits the reasonableness of the agricultural classification, in order to
consider the propriety of the subclassification of 'agricultural workers'
which results from the exclusion of certain of them from coverage,
my difficulty is with the classification of agricultural employers.
Agricultural employers, regardless of the skills of their employees or
the activities engaged in, are accorded a special treatment and
classification of their employees not accorded any other private or
public employer. Such treatment is impermissible, clearly discrimina-
tory and has no rational basis." *Id.,* p 668.

Chief Justice THOMAS M. KAVANAGH and Justices BLACK and
SWAINSON concurred in the opinion written by Justice ADAMS.

[11] We read *Gallegos* as so holding on the basis of the Michigan
constitutional provision (Const 1963, art 1, § 2) independently and
separate and apart from the federal constitutional provision.

[12] In *Stanton v Lloyd Hammond Produce Farms,* 400 Mich 135; 253
NW2d 114 (1977), this Court held that *Gallegos* was retroactive. The

come an overruling of *Gallegos,* the question whether it should be was not raised before the WCAB or the Court of Appeals or in the application for leave to appeal. Nor do the defendants separately state in their briefs in this Court a question asking that *Gallegos* be overruled.[13]

It is noteworthy that whether subsection (d) is invalid because the differential classification of

Court stated that *Gallegos* "held that the agricultural exclusion in the Worker's Disability Compensation Act of 1969, 1969 PA 317, § 115(d); MCLA 418.115(d); MSA 17.237(115)(d), was in violation of the equal protection clauses of the Michigan and United States Constitutions," p 139, that "*Gallegos* held that MCLA 418.115(d); MSA 17.237(115)(d) was unconstitutional because it excluded certain agricultural employees from the coverage of the Michigan Worker's Disability Compensation Act of 1969, thus denying them equal protection of the laws," p 144, and "that the agricultural exclusion contained in MCLA 418.115(d); MSA 17.237(115)(d), which was declared unconstitutional in *Gallegos,* was void from the date of enactment," p 148.

[13] Defendants' brief in this Court may be read as arguing in effect that *Gallegos* was incorrectly decided. Many agricultural employers have relied on this Court's decision in *Gallegos* and secured workers' compensation insurance providing benefits to their injured employees. Those employers and other interested persons, including agricultural workers, who would be affected by a decision of this Court overruling *Gallegos* have not had an opportunity to seek to file briefs amicus curiae on this issue not raised in any of the prior proceedings; they have not had an opportunity to provide a factual predicate for Justice KAVANAGH'S analysis or an alternative analysis justifying a more limited holding.

Defendants' briefs do not set forth or necessarily suggest in the Statements of Questions Involved (GCR 1963, 813.1, 854) that *Gallegos* was incorrectly decided or should be overruled. Eisenga and his insurer stated the question as follows:

"I. DID THE COURT OF APPEALS ERR IN DECIDING THAT PROTECTIONS GUARANTEED CERTAIN SMALL AGRICULTURAL EMPLOYERS BY SUBSECTIONS (a), (b), AND (e) OF § 115 OF THE WORKERS' DISABILITY COMPENSATION ACT ARE CONSTITUTIONALLY INFIRM AND THAT THE DEFENDANT, A FAMILY FARMER, IS THEREFORE LIABLE FOR WEEKLY WORKERS' DISABILITY COMPENSATION BENEFITS UNDER SUBSECTION (a) OF § 115 OF THE ACT?"

It will be noted that no reference is made to subsection (d).

The Second Injury Fund stated the question more generally:

"DID THE COURT OF APPEALS ERR IN CONCLUDING THAT PROTECTIONS AFFORDED SMALL FAMILY FARM AGRICULTURAL EMPLOYERS BY MCLA 418.115; MSA 17.237(115) OF THE WORKERS' DISABILITY COMPENSATION ACT ARE CONSTITUTIONALLY INFIRM, THEREBY DENYING THOSE PROTECTIONS TO THE DEFENDANTS?"

industrial/agricultural employment is unconstitutional—the analysis of the opinion of the Court in *Gallegos*—or because the subclassification of seasonal agricultural workers is invalid—the analysis of Justice Kavanagh's opinion—is of no consequence. Under either analysis, subsection (d) is invalid; Eastway, although not a migrant worker, was a seasonal worker.

We agree with the Court of Appeals that *Gallegos* implicitly held that the "other than agricultural employers" clause of subsection (a) was unconstitutional. Under the analysis of both the opinion of the Court and of Justice Kavanagh, the differentiation between employers of three or more regular employees, under subsection (a), and agricultural employers of three or more regular employees, under subsection (d), was invalid. The exclusion of seasonal agricultural workers of employers of three or more regular employees under subsection (d) being invalid, it necessarily follows that subsection (a), otherwise applicable to employers of three or more regular employees, governs and that the effort to exclude agricultural employers from the operational effect of subsection (a) is also invalid. The "other than agricultural employers" clause of subsection (a) was implicitly held invalid in *Gallegos.*

In sum, under *Gallegos,* the act applies to agricultural employers who regularly employ three or more employees without regard to subsection (d) or the agricultural limitation in subsection (a).

## III

It is unclear whether Eisenga had three or more regular employees.[14] One member of the appeal

---

[14] This case was tried on the following stipulations of facts:

"I.

"Steven Eastway probably started working in 1967 for Mr. Eisenga,

a three week season in late September or early October, hauling potatoes after school and on Saturdays, three or four hours per day after school and ten to twelve hours on what is described as an 'odd' Saturday, this in a three week season in late September or early October, 1967.

"In the fall of 1968 he hauled potatoes for Eisenga in approximately the same manner as was the case in 1967.

"In the spring of 1969 he did a little field cultivating, probably a couple afternoons on Saturday in the spring. In the summer of 1969 Mr. Eastway worked part-time for the Emerald Tree Company about four or five weeks. In June of 1969 during the haying season he worked for Eisenga two or three days per week possibly as much as five to seven hours per day. Following this in the summer of 1969, Mr. Eastway started painting houses with a friend of his about four days a week, and, during this period of time, he would on occasion work four to five hours per week for Mr. Eisenga. Mr. Eastway stopped painting houses when his partner in the painting went back to school in late August of 1969. Following that Mr. Eastway worked at Cadillac Malleable for four days. Following that Mr. Eastway worked for Mr. A. Johnson at least forty hours per week at a salary of $120 per week, and this is in September of 1969, including the week of 9/30/69. While working for Mr. Johnson, he worked but the one day for Mr. Eisenga, that being the day of the accident when he worked starting at noon on the day of the accident and worked until the time of the accident.

"II.

"Reference Mr. Eisenga, there are the following sons:

"1. Bruce, born April 1, 1944. Bruce did not live with the Eisengas in the year 1969 and had his own farm and would help the Eisengas on occasion. He would come and work a bit in the morning and then a bit in the evening. The estimation of the hours worked by Bruce was between ten and twenty hours per week. Bruce was paid $150 every 2 weeks for 52 weeks each year including the year 1969.

"2. The other son, Nelson, date of birth July 8, 1950 and living at 143 Woodland Drive in Cadillac, Michigan, did live at the home of the Eisengas in 1969, is listed as a dependent of Mr. and Mrs. Eisenga on their 1969 income tax record and left the Eisengas' residence in late August of 1970. He was on a [sic] $80 per week salary for full-time work at the Eisengas from the time of his graduation from high school in June of 1968. Nelson was in the National Guard and away from the Eisengas' farm for five months, including January through June of 1969. While Nelson was gone, Mr. Willis Blackledge, a neighbor of the Eisengas, did some of the milking at the Eisengas and worked approximately three to four hours per day at most.

"There were two seasons of the year when there would be a group of people working at the Eisengas' farm, and they are as follows:

"1. The haying season lasting two to three weeks when they would have four to five people working and probably each working a full 40 hr. week.

"2. The potato season which lasted two or two and one-half weeks

board found that he did.[15] Another or both of the

---

when they would have eight to ten people working with the majority of them being students working after school. Each working from 18 to 20 hrs. per week."

"ADDENDUM TO THE PROPOSED STIPULATION OF FACTS
"I.

"The calendar seasons are as follows:

"1. The first haying season would last approximately two weeks starting at the end of June and going through the middle of July.

"2. The second haying season would occur in late August and would last for approximately one week.

"3. The potato season starts at the end of September and lasts until approximately the middle of October, a period of two to two and one-half weeks.

"II.

"The son, Nelson, while working full-time [approximately 40 hours per week] at the Eisengas during the period previously spelled out in the Proposed Stipulation of Facts, would work days of up to ten (10) hours in his work for his parents."

[15] Each of the three member WCAB panel filed a separate opinion. Only Robert L. Richardson specifically addressed the question whether there were three or more regular employees. He found that there were:

"Without considering defendant's son Nelson, we find that for purposes of compensation coverage, defendant is a private employer under section 115(a) who regularly employed three or more employees at one time, as per the stipulation of facts pertaining to not only his away-from-home son Bruce, but the extra employees during the haying and potato seasons each year. Defendant is thus liable for payment of benefits to plaintiff as set forth in the referee's order."

While there were still other issues, the bulk of Mr. Richardson's opinion was devoted to a consideration of the scope of the holding in *Gallegos.* Member William C. Marshall, Jr., filed a separate opinion stating:

"I concur with my associate's opinion and result in this case except that I cannot endorse his position that *Gallegos v Glaser Crandell Co,* 388 Mich 654 (1972), is concerned only with the constitutionality of MCLA 418.115(d). I believe that *Gallegos* is much more broadly premised and sweeping in its impact than this."

The opinion continues with a discussion of *Gallegos* but does not specifically advert to whether Eisenga had three or more regular employees.

Member Robert W. Kehres' opinion was denominated "concurring in result with Member Richardson." He agreed with Mr. Marshall regarding the scope of *Gallegos* but did not specifically advert to whether there were three or more regular employees.

The Court of Appeals stated:

"In our view, the *Gallegos* Court, at least implicitly, declared that all distinctions between private and agricultural employees violate

other members may have concurred in that finding, but their opinions do not clearly so state.[16] We would remand to the WCAB for clarification of whether it decided that Eisenga had three or more regular employees and further proceedings consistent with this opinion.

We have considered the defendant's family farm argument. While the Legislature may have had the family farmer in mind in drafting subsection (e), providing that the term agricultural employee does not include certain resident members of the family, subsection (d) would exclude seasonal

the equal protection clause of the Fourteenth Amendment. Here, plaintiff sustained injuries during the potato season, a period in which defendant Eisenga, regularly employed three or more employees at one time. Under § 115(a), the act is applicable to a non-agricultural employer. Based on our determination that the separate treatment afforded agricultural employers unconstitutionally deprives their employees of equal protection, we hold that defendant Eisenga is an employer subject to the provisions of the act pursuant to § 115(a). We strike the terms 'other than agricultural employers' from MCL 418.115(a), (b); MSA 17.237(115)(a), (b)."

Eisenga and his insurer contend that until this cause reached the Court of Appeals on remand from this Court for consideration as on leave granted, 413 Mich 872 (1982), the parties considered the equal protection question "in terms of whether Mr. Eisenga's sons could be counted in determining the number of employees on the farm or whether the seasonal workers could be counted as regular employees so as to bring the Eisengas within the provisions of MCLA 418.115(a) and (b)," and that the Court of Appeals was not justified in finding that Eastway was injured "during the potato season, a period in which defendant Eisenga regularly employed three or more employees at one time."

We do not find any decision of this Court on the question of what constitutes regular employment. See generally 81 Am Jur 2d, Workmen's Compensation, § 103; *Rodwell v Pro Football, Inc,* 45 Mich App 408; 206 NW2d 773 (1973); 1C Larson, Workmen's Compensation, § 52.20. In the Court of Appeals and in their brief in support of their application for leave to appeal, Eisenga and his insurer suggested that the WCAB could construe the term "regularly employ" to take into account the seasonal nature of agricultural employment which distinguishes it "from the work of an employer who regularly hires outside help whenever he has any work to do."

[16] See fn 15.

workers whether they are employed by a family farm or a large farm or enterprise.[17]

The question whether the exclusion of resident members of an agricultural family set forth in subsection (e) is applicable to subsections (a) or (b) as well as subsection (e)[18] need not be decided if

---

[17] The argument that the agricultural employment exclusion should be read to exclude family farms ignores the broad definition of the term "agricultural employer" under § 155 of the act. MCL 418.155; MSA 17.237(155). If the Court's holding in *Gallegos* were to be limited so that three regular employees must work more than 35 hours per week for 13 weeks, then the act would not apply to an agricultural employer who has a regular work force of 20 or 100 or more employees who generally work no more than 30 hours per week even if those employees work 40 or more weeks per year and work substantial overtime for no more than, say, 10 weeks per year as long as no more than two employees work more than 35 hours per week for 13 weeks. The language of such an exclusion would, thus, not be confined to family farmers. In all events, the basis of decision in *Gallegos* precludes reading into subsection (d) a subclassification for family farmers. It is clear that *Gallegos* at least held that the agricultural exemption set forth in subsections (a) and (d) was in its entirety unconstitutional.

We also note that the defendants in the instant case have not provided a definition of a family farmer although it is clear that they regard Eisenga to be a family farmer. The number of persons employed by Eisenga is set forth in the stipulations (see fn 14). We would not, however, be justified in reading into the act a definition of a family farmer which essentially characterizes Eisenga, but not other farmers whose operations vary somewhat in terms of the number of employees and hours worked.

[18] Subdivision (e) (see fn 1 for text) also differs from subdivision (b) in that the employee need only have worked 35 or more hours per week for 5 or more consecutive weeks rather than 13 weeks or longer, and the obligation of the agricultural employer is not to provide disability benefits but rather to "provide for such employees" medical and hospital coverage. Subdivision (e) states that the provision of such medical and hospital coverage shall not affect any right of recovery the employee would otherwise have against the employer.

While it is indeed arguable that *Gallegos* declared that the agricultural exemption set forth in subsections (b) and (e) was unconstitutional, we need not decide that question at this time. *Gallegos* adverted to subsection (e) stating:

"Nor are the exclusions from the act allowed agricultural employers under §115(d) remedied by the treatment accorded agricultural employees under § 115(e).

\*    \*    \*

"Finally, the argument that § 115(e) is especially tailored to meet

Eisenga had, as at least one member of the WCAB found, three regular employees other than family members; Eastway was not a member of Eisenga's family. If Eisenga had three regular employees other than his sons, it would not be necessary to decide whether *Gallegos'* holding that the differential treatment of industrial/agricultural employment under subsections (a) and (d) is invalid precludes the differential treatment of resident family members of an agricultural employer. The differential treatment in subsection (e) of members of an agricultural employer's family who reside in his household implicates other sections of the act that provide for a somewhat similar differentiation.[19]

The case should be remanded to the WCAB for further proceedings consistent with this opinion.

KAVANAGH, J., concurred with LEVIN, J.

the problems of the small farmer and his occasional employees fails to account for the need for similar treatment as to the small businessman—grocer, clothier, butcher—or as to the small contractor—plumber, carpenter, roofer—or as to numerous other categories of small employers and their employees who are not accorded this treatment." *Gallegos v Glaser Crandell Co, supra,* pp 667-668.

*Gallegos* does not appear to have directly involved the constitutionality of subdivision (e) or of the exclusion in counterpart subsection (b). The only employee in the instant case with the requisite 35 hours and 13 weeks was Eisenga's son residing in his house.

[19] Section 118 of the act provides that no household domestic servant who is a wife, child or other member of the employer's family residing in the home shall be considered an employee. MCL 418.118; MSA 17.237(118). Section 161(2) of the act provides that a spouse of an employer may be excluded from coverage by indorsement of a policy or contract of workers' compensation insurance. MCL 418.161; MSA 17.237(161).