STRAUSSER v THUMB AUTO PARTS

Docket No. 143358. Submitted November 5, 1992, at Lansing. Decided March 15, 1993, at 9:00 A.M.

Richard Strausser sought workers' disability compensation, claiming that he was injured in the course of his employment with Thumb Auto Parts, Inc. Thumb and its insurer, Meridian Mutual Insurance Company, argued that Strausser, the sole stockholder of Thumb and the co-owner with his wife of the building in which Thumb was located, was not acting as an employee of Thumb when he was injured, but, rather, as the owner of the premises. The injury occurred after normal business hours and while Strausser was insulating the building he and his wife owned and Thumb leased. A hearing officer found that Strausser was injured in the course of his employment with Thumb, and the Workers' Compensation Appellate Commission affirmed. Thumb and Meridian appealed by leave granted.

The Court of Appeals *held:*

1. There was competent, material, and substantial evidence on the whole record to support the finding that Strausser was acting in the course of his employment with Thumb at the time of his injury.

2. The commission did not err in holding that Strausser was injured in the course of his employment with Thumb. The record establishes that the insulation work conferred a benefit on Thumb and was undertaken outside the normal hours of employment in order to avoid causing inconvenience to Thumb's customers. The record clearly shows that Strausser would not have been injured but for his employment with Thumb.

Affirmed.

*Coticchio, Zotter, Sullivan, Molter, Skupin & Turner, P.C.* (by *Richard W. Bohan*), for the defendants.

Before: WEAVER, P.J., and McDONALD and NEFF, JJ.

NEFF, J. This is a workers' compensation case. A magistrate found that plaintiff sustained an injury arising out of and in the course of his employment that resulted in a continuing disability entitling him to an open award of benefits. The magistrate also ordered defendants to furnish plaintiff with a prosthesis that would enable him to return to work and to function as nearly as possible as he did before his injury.

At the hearing of this matter defendant Thumb Auto Parts, Inc., contested numerous issues, including whether plaintiff was its employee, whether plaintiff's injury arose out of and in the course of his employment, and whether a disability resulted from the injury. On appeal to the Workers' Compensation Appellate Commission, defendants limited the issues to whether plaintiff was an employee within the meaning of the Workers' Disability Compensation Act, MCL 418.101 et seq.; MSA 17.237(101) et seq., whether plaintiff was within the course of his employment when injured, and whether disability from the injury continued. Plaintiff's open award of benefits was affirmed by the WCAC.

Leave to appeal to this Court was granted, but limited to the single issue whether plaintiff's injury arose out of and in the course of his employment with Thumb Auto Parts. On the basis of our review of the record, we find that there was competent, material, and substantial evidence in the whole record to support the finding that plaintiff's injury arose out of and in the course of his employment with Thumb Auto Parts. We also find that the WCAC applied the correct legal reasoning to reach its result. Therefore we affirm.

I

Plaintiff is a forty-five-year-old man who lost his left arm below the elbow in a hunting accident

when he was sixteen years old. He was left-handed until the accident, but trained himself to be right-hand dominant. He also learned to use a prosthesis on his left arm and was apparently very successful in adapting to the loss of his left forearm. He was a hard-working productive individual who, by his own testimony, had never accepted welfare and had always supported his wife and three sons.

Before 1985, plaintiff worked for an auto parts company in Bay City, which he subsequently purchased. In 1985, plaintiff incorporated Thumb Auto Parts. He was the sole stockholder in the corporation and the only employee who received a regular salary from the corporation. Plaintiff worked seven days a week, sometimes as much as sixteen hours a day in the business. He performed a wide range of duties, which included unloading delivery trucks of stock such as cases of motor oil, waiting on customers at the counter, and installing batteries in customers' cars. Plaintiff performed any and all tasks required in the business, including sweeping up. Thumb Auto Parts was a small business in a small town from which plaintiff earned a modest living by working long hours and performing whatever tasks needed to be done to operate the business. Plaintiff's wife worked as the bookkeeper for Thumb Auto Parts.

Thumb Auto Parts was located in a building owned by plaintiff and his wife in their individual capacities. The corporation paid rent and all utilities and was responsible for maintenance of the interior of the building, including maintenance of heating, ventilating, air conditioning, plumbing, and electrical equipment and service. Exterior maintenance, including the roof and exterior walls and landscaping were the responsibility of plaintiff and his wife, as owners of the building.

As part of its business, Thumb Auto Parts oper-

ated a machine shop on the same rental premises. The unrebutted testimony was that the auto parts and machine shop operations were one and the same. The magistrate accepted the testimony of plaintiff, his wife, and a part-time employee that the machine shop was a wholly owned subsidiary of Thumb Auto Parts.

At the hearing, there was considerable cross-examination of both plaintiff and his wife by defense counsel concerning the issue of the status of the machine shop. Both unequivocally and repeatedly testified that the two are one entity. Testimony established that an assumed name certificate filed on behalf of the machine shop was not filed until sometime after plaintiff's injury, disability, and inability to work for Thumb Auto Parts. Testimony also clearly established that Thumb Auto Parts paid rent on the entire premises, including the space occupied by the machine shop, and that it paid the heating bill for the entire building. The auto parts business and the machine shop were one entity for tax purposes.

All the evidence in the record supports the finding that Thumb Auto Parts and the machine shop were a single corporate enterprise at the time of plaintiff's injury.

In December 1986, plaintiff undertook to insulate the ceiling of the building in which Thumb Auto Parts carried out its business. The purpose of the project was to reduce the corporation's heating bills and to render the building more comfortable for its customers and employees. Because the insulating work was to involve blowing loose insulation into the space above the ceiling, a messy and untidy process, plaintiff decided to do the work after normal business hours.

On December 4, 1986, after Thumb Auto Parts closed for the day, the work on the insulation

project began. At about 2:30 A.M. on December 5,
1986, while he was walking on the ceiling joists
blowing insulation throughout the space, plaintiff
slipped off the joists and fell through the ceiling.
His resulting injuries, primarily to the stub of his
left arm, caused him to be unable to continue to
use the prosthetic device that had made it possible
for him to participate in a full range of activities.
Defendant Meridian Mutual Insurance Company
refused to provide plaintiff with a new, costly,
prosthetic device, and, at least up to the date of
the hearing plaintiff had not been able to return to
work.

II

On appeal, defendants attack the opinion of the
WCAC in which it held, among other things, that
plaintiff's injury arose out of and in the course of
his employment with defendant Thumb Auto
Parts, even though the insulation work plaintiff
was engaged in at the time of his injury was
outside his job description, was performed after
hours, and would benefit plaintiff's personal inter-
ests as part owner of the building.

The magistrate found, and the WCAC majority
agreed, that while plaintiff and his wife, as owners
of the building, would benefit from some enhance-
ment of the value of the real estate, there was also
a significant benefit that inured to Thumb Auto
Parts from the installation of insulation. It was
anticipated that the insulation would reduce heat-
ing bills and that it would create a more comforta-
ble environment for customers and employees.[1]
The testimony established that the insulation

[1] There was testimony at trial that both purposes were accom-
plished. There was no testimony or evidence of any enhancement of
the value of the real estate.

work was performed after normal business hours to avoid exposing customers to the mess and disruption caused by the insulation work and materials.

The WCAC dissent looked to the somewhat unusual circumstances of this case. The dissent noted that plaintiff functioned in a number of roles, including sole shareholder, president, and employee of the corporation, and that he and his wife, in their individual capacities, were also the owners of the building in which Thumb Auto Parts did its business. The dissent concluded that it was plaintiff's burden to show that but for his employment with Thumb Auto Parts he would not have been on the premises after hours putting insulation in the ceiling.

We agree with the WCAC majority and hold that there is competent, material, and substantial evidence in the whole record to support the finding that plaintiff was acting within the course of his employment when he was injured.

### III

We review as a question of law defendants' claim that the WCAC committed legal error in failing to properly analyze whether plaintiff's injuries arose out of and in the course of his employment with Thumb Auto Parts. MCL 418.861a(14); MSA 17.237(861a)(14). We find that the WCAC majority did not commit legal error in focusing on whether the work performed by plaintiff at the time of his injury benefited Thumb Auto Parts.

### A

Defendants argue that plaintiff was not performing work within his normal job description when

he was injured and, accordingly, he was not acting within the scope of his employment at that time. We reject this argument for two reasons. First, it is not particularly important whether plaintiff was performing work outside his normal job description. *Field v Jack & Jill Ranch,* 343 Mich 273; 72 NW2d 26 (1955). Second, plaintiff did not have a hard and fast job description, as pointed out earlier in this opinion. He was, in essence, a jack-of-all-trades in the operation of Thumb Auto Parts. Whatever needed to be done in the business, plaintiff did. In addition to that, the lease agreement required Thumb Auto Parts to be responsible for interior maintenance of the building. The process of insulating the building falls within that corporate responsibility.

Defendants also argue that because the work was performed after normal working hours, plaintiff's injury did not occur in the course of his employment. Again, we reject defendants' claim on two bases. First, an injury after hours does not necessarily preclude a finding that the injury arose out of and in the course of employment. *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973). Second, there was a very good reason for proceeding with the work after hours. As noted above, the work of blowing loose insulation into the area above the ceiling of the building was dirty and disruptive. For that reason, according to both plaintiff and his wife, the insulation work was performed after hours to avoid exposing customers to the insulation work and materials. This testimony, unrebutted on the record and accepted by the magistrate and the WCAC majority, is a perfectly reasonable explanation for doing this work after normal business hours.

Finally, defendants argue that it was error for the WCAC majority to focus on the benefit that

defendant Thumb Auto Parts derived from the insulation work in concluding that plaintiff was in the course of his employment when injured. Again, we disagree and find that the WCAC majority did not commit legal error in concluding that plaintiff's injuries arose out of and in the course of his employment.

B

In finding that plaintiff's injury is compensable, the WCAC majority relied on *Nemeth, supra.* In the *Nemeth* case, an employee stayed after hours to use his employer's equipment to work on a personal project for a co-worker. The work was strictly personal in nature and had been approved by the employer. The Supreme Court found that there was a sufficient connection between the employment and the injury, finding that but for the employment relationship the employee probably would not have been requested by his co-worker to stay and work and he probably would not have been allowed to use the equipment or the premises for that purpose. *Id.,* pp 736-737. The Supreme Court, in finding a sufficient nexus between the employment and the injury, even though the injury occurred after regular working hours and while the employer's equipment was being used for a purpose other than the employer's work, focused on the various circumstances under which an employer expends funds to establish employee good will.

The current case provides even stronger and more persuasive circumstances on which to find a sufficient causal nexus between employment and injury. Here, plaintiff-employee was carrying out a task that would significantly benefit defendant employer. As noted, the insulation not only serves

to reduce the employer's heating bills, it also provides a more comfortable environment for customers and employees.

The WCAC majority opinion does not contain a lengthy explanation of the legal reasoning it employed in affirming the award of benefits to plaintiff. However, its reliance on *Nemeth* indicates that it applied the rule of *Nemeth,* including that portion of the *Nemeth* opinion seized on by defendants that "but for" the employment relationship the injury would not have occurred. We conclude that this was not legal error. Plaintiff's injury, like that in *Nemeth,* arose out of the employment relationship and flowed from plaintiff's employment. *Id.* The record before us is susceptible of only one interpretation: that but for plaintiff's employment relationship with defendant Thumb Auto Parts, he would not have been insulating the ceiling and placing himself in the position of peril that resulted in his injury. Despite vigorous cross-examination by defense counsel, there is nothing in this record to suggest that plaintiff's purpose was to enhance the value of the real estate that he owned jointly with his wife. In addition, there is nothing in the record to suggest how much, if at all, the value of the real estate was enhanced by the installation of the insulation.

Thus we find that there is competent, material, and substantial evidence in the whole record to support the WCAC majority's finding that plaintiff's injury resulted from his employment and that but for the employment he would not have been injured. The fact that there might have been some direct personal benefit to plaintiff, as well as a direct benefit to the Thumb Auto Parts from the work that plaintiff was performing when he was injured, does not preclude the award of benefits. *Sellers v Hauch,* 183 Mich App 1, 17; 454 NW2d

150 (1990). The employment was the occasion for the injury, and the WCAC applied a correct legal standard. *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970).

Affirmed.